THIRD DIVISION

March 24, 2004

Nos. 1-03-0263 and1-03-1706 (consolidated)

CATERPILLAR, INC.; ABBOTT LABORATORIES, INC.; FORD MOTOR COMPANY; A FINKL AND SONS COMPANY; DAIMLER CHRYSLER CORPORATION; MODERN DROP FORGE COMPANY AND GENERAL MOTORS CORPORATION, 

Petitioners, 

v.

ILLINOIS COMMERCE COMMISSION; COMMONWEALTH EDISON COMPANY; PEOPLES ENERGY SERVICE CORPORATION; CENTRAL ILLINOIS LIGHT COMPANY; THE PEOPLE OF COOK COUNTY; THE PEOPLE OF THE STATE OF ILLINOIS; ILLINOIS POWER COMPANY; BLACKHAWK ENERGY SERVICES, LLC; MIDAMERICAN ENERGY COMPANY; UNITED STATES DEPARTMENT OF ENERGY; CITIZENS UTILITY BOARD; METROPOLITAN WATER RECLAMATION DISTRICT; CHICAGO AREA CUSTOMER COALITION; AMEREN CIPS AND AMEREN UE; BUILDING OWNERS AND MANAGERS ASSOCIATION; TRIZEC PROPERTIES, INC; NATIONAL ENERGY MARKETERS ASSOCIATION; AES NEW ENERGY, INC; METROPOLITAN CHICAGO HEALTHCARE COUNCIL; and THE CITY OF CHICAGO; 

Respondents.

)

)

)

)

)

)

)

)

))))))))))))))))))))))

On direct appeal from the Illinois Commerce Commission,

Docket No. 02-0479

JUSTICE KARNEZIS delivered the opinion of the court:

This consolidated appeal arose as a result of a petition filed by Commonwealth Edison (ComEd) to declare certain electrical services "competitive" and to allow certain tariff amendments implementing the competitive service.  Numerous parties intervened, including: Peoples Energy Service Corporation; Central Illinois Light Company; the People of Cook County; the People of the State of Illinois; Illinois Power Company; Blackhawk Energy Services, LLC; MidAmerican Energy Company; Illinois Industrial Energy Consumers; the United States Department of Energy; Citizens Utility Board; Metropolitan Water Reclamation District; Chicago Area Customer Coalition; Ameren CIPS and Ameren UE; Building Owners and Managers Association; Trizec Properties, Inc; National Energy Marketers Association; AES NewEnergy, Inc; and the Metropolitan Chicago Healthcare Council.  Appearances were also filed by the City of Chicago and the Illinois Commerce Commission. 

Appellants Caterpillar, Inc.; Abbott Laboratories, Inc.; Ford Motor Company; A Finkl & Sons Co.; Daimler Chrysler Corporation; Modern Drop Forge Company; and General Motors Corporation participated in the proceedings collectively as the Illinois Industrial Energy Consumers (IIEC) and filed 
separate appeals.  Both appeals concern the petition filed by ComEd.  We affirm the Commission's determination finding certain electrical services competitive (appeal number 1-03-0263) and affirm its order setting the "Rate Hourly Energy Price" as modified (appeal number 1-03-1706).

Proceedings Before the Commission

On July 19, 2002, ComEd filed a petition with the Commission to declare certain electrical services "competitive" pursuant to section 16-113 of the Public Utilities Act (Act) (220 ILCS 5/16-113 (West 2000)).  Section 16-113 provides in part:

"An electric utility may, by petition, request the Commission to declare a tariffed service provided by the electric utility to be a competitive service. *** The Commission shall declare the service to be a competitive service * * * if the service or a reasonably equivalent substitute service is reasonably available * * * at a comparable price from one or more providers other than the electric utility or an affiliate of the electric utility, and the electric utility has lost or there is a reasonable likelihood that the electric utility will lose business for the service to the other provider or providers * * *."  220 ILCS 5/16-113 (West 2000).    

ComEd's petition concerned
 its Rate 6L - Large General Service (Rate 6L), which provides electric power and energy to large commercial and industrial customers with loads of 3 megawatts (3MW) or greater
.  The petition alleged that because there was equivalent service available at comparable prices from other providers, ComEd's Rate 6L should be declared competitive.  The petition also requested approval of the "related tariff amendments," which refers to the rate or cost of the service if it were deemed competitive.           

Shortly thereafter, several parties moved to dismiss the petition or, in the alternative, to bifurcate the proceedings.  The Commission denied the motion to dismiss the proceedings but agreed to bifurcate the proceedings.  The Commission would first determine whether to declare Rate 6L competitive.  Then, if Rate 6L was declared competitive, the Commission would determine what "tariff," or rate, would apply to the service.  

After several hearings addressing whether Rate 6L should be declared competitive, the Commission issued an "interim order" on November 14, 2002.  The interim order did not specifically grant or deny ComEd's petition.  The interim order stated it would allow the petition to take effect by "operation of law" on the 120th day following the filing of the petition
 pursuant to section 16-113, which occurred on 
November 16, 2002
.  Section 16-113 provides, in part: 

"The Commission shall make its determination and issue its final order declaring or refusing to declare the service to be a competitive service within 120 days following the date that the petition is filed, or otherwise the petition shall be deemed to be granted; provided, that if the petition is deemed to be granted by operation of law, the Commission shall not thereby be precluded from finding and ordering, in a subsequent proceeding initiated by the Commission, and after notice and hearing, that the service is not competitive * * *."  220 ILCS 5/16-113 (West 2000).

The Commission's order included a summary of the evidence as well as findings of fact.  It also explained its reason for allowing the petition to take effect by operation of law.  The interim order specifically stated, "the Commission, in its review of the evidence, finds that competitive conditions in the ComEd service territory for Rate 6L customers 3MW and greater exist in considerable degree; however, there are sufficient concerns about recent developments that cause the Commission to refrain at this time from either granting or denying ComEd's petition." 
 Appellants filed a petition for rehearing with the Commission to reconsider the Commission's interim order, which was denied.  Appellants filed an appeal on January 31, 2003, which was given appellate number 1-03-0263.  

The Commission held several additional hearings to determine what rate should apply to ComEd's Rate 6L service.  ComEd proposed a rate they referred to as "Rate Hourly Energy Pricing" (HEP), which would provide
 hourly energy prices to consumers the day before the service is provided.  
The Commission entered an order on March 28, 2003, adopting the Rate HEP, with some modifications.  Appellants filed a petition for rehearing with the Commission to reconsider the order, which the Commission denied.  Appellants filed an appeal on June 18, 2003, from the Commission's March 28, 2003, order, which was given appellate number 1-03-1706.

Appeal Number 1-03-0263  

Appellants contend: (1) the interim order is unlawful because the Commission lacked authority to state in the interim order that the petition would take effect by operation of law; (2) the Commission was required to either grant or deny the petition because it held hearings on the matter; (3) ComEd failed to meet its burden that Rate 6L should be declared competitive; and (4) the Commission's conclusion that the evidence regarding the number of consumers that switched from ComEd's Rate 6L service to other competitors was not supported by substantial evidence.

It is clear from section 16-113 that the Commission had three options; it could declare the service competitive; refuse to declare the service competitive; or, do neither and let the petition be deemed granted by operation of law.  The latter alternative would, in effect, decide that the service was competitive with the additional factor of the Commission retaining the ability to review or reconsider its finding.  Section 16-113 gives the Commission a great deal of flexibility.    

Appellants first contend the "interim order" issued by the Commission was "unlawful" because the Commission lacked authority to state that the petition, or at least a portion of the petition (i.e., that the service was competitive) would take effect "by operation of law."  

We find nothing in the Act that prohibits the Commission from preparing or filing an interim order.  We note that appellants have cited no authority that would preclude this action by the Commission.  They simply state that it is unlawful.  The Commission has the power to administer its proceedings and can, if it chooses, file "interim orders."  The interim order, in essence, became a final and appealable decision as to the question of "competitive service" 120 days after the filing of the petition and after the petition for rehearing was denied.  We do not treat this case as an appeal of the interim order; rather, it is an appeal of the determination that the service was competitive. 

Appellants next suggest the Commission was "required" to either grant or deny the petition because it held hearings on the matter.  However, nowhere in the Act is this "requirement" stated.  Rather, the Commission may or may not order hearings and whether hearings are held does not limit the Commission's actions.  Clearly, it may grant or deny a petition, or take no action on the petition.    

           Appellants next argue that because "the Commission was unable to find ComEd had met its burden of proof," the decision finding the service competitive must be reversed.  The interim order does not state that ComEd failed to meet its burden.  The order specifically stated "competitive conditions in the ComEd service territory for Rate 6L customers 3 MW and greater exist in considerable degree."  The order then cautioned, however that "there are sufficient concerns about recent developments that cause the Commission to refrain at this time from either granting or denying ComEd's petition."  Nowhere does the order state that ComEd failed to meet its burden.    

Lastly, appellants contend the evidence did not support the finding that the service was competitive.  Our standard of review for reviewing an administrative agency's decision is governed by the Administrative Review Law. 735 ILCS 5/3-101 
et seq.
 (West 2000).  It provides that our review extends to all questions of law and fact presented by the entire record.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E. 2d 1111, 1117 (1992).  The statute further mandates that an administrative agency's factual findings are "held to be prima facie true and correct."  735 ILCS 5/3-110 (West 2000); see also 
Antonelli v. Board of Trustees of the Hillside Police Pension Board
, 287 Ill. App. 3d 348, 353, 678 N.E. 2d 773, 776 (1997).  Courts conducting administrative review are prohibited from reweighing the evidence or making an independent determination of the facts.  
Abrahamson
, 153 Ill. 2d at 88, 606 N.E. 2d at 1117.  Rather, we are limited to ascertaining whether the factual findings of the agency are against the manifest weight of the evidence.  
Abrahamson
, 153 Ill. 2d at 88, 606 N.E. 2d at 1117
.  Factual findings are against the manifest weight of the evidence only where all reasonable and unbiased persons would agree it is clearly evident the administrative agency erred and should have reached the opposite conclusion.  See 
La Salle Partners, Inc. v. Illinois Property Tax Appeal Board
, 269 Ill. App. 3d 621, 632, 646 N.E. 2d 935, 942 (1995).  If the record contains evidence supporting the agency's decision, it should be affirmed.  
Abrahamson
, 153 Ill. 2d at 88, 606 N.E.2d at 1117. 

The question before this court is whether the Commission's decision is supported by the evidence.  The Commission heard evidence "for and against" finding the service competitive.  The Commission sided with ComEd.  Essentially appellants urge this court to reconsider the Commission's finding, rather than arguing the finding was not supported by the evidence.  We reiterate that our role is not to substitute our views for those of the Commission.  Appellants have not shown the Commission's findings are against the manifest weight of the evidence.  We affirm the decision of the Commission finding Rate 6L to 3 MW and greater customers competitive.         

Appeal Number 1-03-1706

Appellants contend the Commission's order of March 28, 2003, is unlawful because the Rate HEP allows ComEd to recover a transition charge.  The order states in pertinent part as follows: 

Rate HEP would consist of: 

(a) charges calculated to equal the charges for delivery services;

(b) charges for transmission services and ancillary transmission services; 

(c) charges calculated to equal the charges for the supply of electric power and energy;

(d) "a charge expressed in cents per kilowatt-hour calculated to equal the charge determined using the formula set forth in the definition of the transition charge in Section 16-102 of the Act, except that:

(i) the market value in item (3) of such formula that is used to determine such charge shall be determined in accordance with Section 16-112 of the Public Utilities Act except that such market value will not include any adjustments or any adders underlying the Market Value Energy Charges of Rider PPO-Power Purchase Option (Market Index) for the corresponding Applicable Period A, however, such value will be increased for system average line losses and will be increased by 10% consistent with the increases for system average line losses and the contribution to fixed cost adder included in Price;

(ii) such charge would not be less than zero;" and 

(e) metering charges.    

Appellants' contentions with respect to the March 28, 2003, order focus on subsection (d) of the Rate HEP.  Appellants contend that subsection (d) is a "transition charge," which ComEd is not authorized under the Act to collect.  They argue the Act only permits ComEd to recover a transition charge from those customers who take delivery service as well as power and energy services from suppliers other than ComEd.  They maintain that here, because the customers are taking services from ComEd, ComEd cannot impose a transition charge.

The Commission contends that subsection (d) is not a transition charge.  It argues it is a charge, which is based in part on the transition charge formula in section 16-102 of the Act; however, it differs from a transition charge.  

Upon review, we are mindful that an order of the Commission is considered to be prima facie reasonable, and the party appealing the decision bears the burden of overcoming this presumption of reasonableness.  220 ILCS 5/10-201(d) (West 2000).  With this consideration in mind, we do not believe appellants have overcome their burden of establishing the Commission's order was unreasonable.  They have provided no compelling argument that subsection (d) is a transition charge.  Appellants spend a great deal of effort arguing that the Rate HEP cannot include a transition charge, yet they do not specifically argue how subsection (d) qualifies as a transition charge.  Section 16-102 provides the definition of a transition charge, which consists of numerous subsections too lengthy to reiterate.  Nowhere in appellants' brief do they specifically argue how subsection (d), which does not include all of the components of a transition charge, qualifies as a transition charge, other than the fact that it is a charge based in part on the transition charge formula.  It is appellants' burden to prove the Commission's order is unreasonable, and they have failed to do so here.  Further, the Commission's order specifically stated the Rate HEP does not include "the imposition of [a] delivery service transition charge."  We conclude the Commission's March 28, 2003, order adopting the Rate HEP was reasonable.  

Accordingly, we affirm the Commission's orders in appeal number 1-03-0263 and appeal number 1-03-1706.  

Affirmed.  

SOUTH, J. and HALL, J. concur.