LAWRENCE WADE, Plaintiff-Appellant, v. THE CITY OF NORTH CHICAGO POLICE PENSION BOARD, Defendant-Appellee.

Second District   No. 2—04—0047

Opinion filed August 3, 2005.

BOWMAN, J., dissenting.

Bernard Wysocki, of Wysocki & Smith, of Waukegan, for appellant.

Richard J. Reimer, Thomas S. Radja, Jr., and Chris W. Potthoff, all of Richard J. Reimer & Associates, L.L.C., of Hinsdale, and Richard J. Puchalski, of Law Office of Richard J. Puchalski, of Chicago, for appellee.

Stanley H. Jakala, of Berwyn, for *amicus curiae*.

JUSTICE BYRNE delivered the opinion of the court:

On December 3, 2004, this court filed an opinion in the above-entitled case. See 353 Ill. App. 3d 852 (2004). In that opinion, we addressed whether defendant, the City of North Chicago Police Pension Board (the Board), wrongly denied plaintiff, Lawrence Wade, a line-of-duty disability pension (see 40 ILCS 5/3—114.1 (West 2002)), in part because Dr. Milgram, one of the three doctors the Board selected to examine plaintiff, did not certify plaintiff as disabled pursuant to section 3—115 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3—115 (West 2002)). Plaintiff argued that (1) the Board denied him a fair and impartial hearing because it relied solely on Dr. Milgram's medical report in denying him a disability pension; (2) the Board's decision was contrary to the manifest weight of the evidence; and (3) the Board improperly interpreted section 3—115 to mandate that, before a disability pension can be granted, all three examining physicians selected by the Board must certify that the applicant is disabled. We found that the Board correctly interpreted section 3—115 and properly denied plaintiff's application for disability pension benefits, and we affirmed the Board's decision on this basis only. Compare *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713, 727-30 (2004), with *Rizzo v. Board*

*of Trustees of the Village of Evergreen Park Police Pension Fund*, 338 Ill. App. 3d 490, 495 (2003).

Subsequently, plaintiff petitioned our supreme court for leave to appeal, which the supreme court denied. *Wade v. City of North Chicago Police Pension Board*, No. 99806 (May 2005). However, it entered a supervisory order directing this court to vacate our judgment, in light of *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, 214 Ill. 2d 521 (2005), to resolve the issue of whether the Board's determination that plaintiff had not proven his disability was against the manifest weight of the evidence. Pursuant to the supreme court's supervisory order, we find that the Board's determination that plaintiff had not proven his disability was contrary to the manifest weight of the evidence. However, we further conclude that, because the Board did not receive three certificates of plaintiff's disability, he was properly denied pension benefits under section 3—115.

## FACTS

Plaintiff was hired as a full-time police officer by the North Chicago police department in June 1982. In 1989, plaintiff injured his right knee playing football. Dr. Roger B. Collins examined him in 1991 and again in 1992, when his knee problems continued. In August 1997, he twisted his right knee playing softball and underwent arthroscopic surgery. His knee problems continued and, in late 2001 and early 2002, he missed work for approximately eight weeks because of them. He returned to work in February 2002.

On April 20, 2002, plaintiff injured his right knee when he tumbled down an embankment while escorting a prisoner. Plaintiff sought immediate medical attention at Lake Forest Hospital, where he reported feeling a "pop" when he fell and experiencing pain and knee swelling. Dr. Chris Pavlatos, an orthopedic surgeon, performed orthoscopic surgery on plaintiff on May 17, 2002, after an MRI disclosed what Dr. Pavlatos believed was a new tear in the medial and lateral meniscus. On May 29, 2002, Dr. Pavlatos released plaintiff for "light duty work" and stated that plaintiff would "need to switch to a permanent sit down job with no running activities." This restriction was reiterated by Dr. Pavlatos after he examined plaintiff again on August 8, 2002.

On September 4, 2002, Dr. Mark Levin, an orthopedic surgeon, conducted an examination of plaintiff. His report indicated that plaintiff had chronic and long-standing knee problems that predated the April 20, 2002, injury. Dr. Levin noted that he examined plaintiff's MRI scan from April 24, 2002, which showed arthritic changes of the knee as well as "findings consistent with a medial meniscal tear." After reviewing plaintiff's history, radiographic studies, and medical

records and performing a physical examination, Dr. Levin opined that plaintiff appeared to have tri-compartment arthritis of the right knee, which was chronic and long-standing and predated the injury from April 20, 2002. He further opined that plaintiff did not have the ability to return to work as a patrol officer because of the underlying arthritis of the right knee.

On September 23, 2002, plaintiff was advised that there were no permanent sedentary positions available for a police officer and his options were to retire or to apply for a disability pension. Thereafter, on October 8, 2002, plaintiff filed an application with the Board for a disability pension. He did not specify whether he was seeking a line-of-duty (see 40 ILCS 5/3—114.1 (West 2002)) or a not-on-duty (see 40 ILCS 5/3—114.2 (West 2002)) disability pension under the Pension Code.

Pursuant to statutory mandate (see 40 ILCS 5/3—115 (West 2002)), three physicians selected by the Board, Dr. John Dwyer, Dr. Christopher Reger, and Dr. James W. Milgram, examined plaintiff. Drs. Dwyer and Reger found plaintiff to be disabled from a "work-related" injury and issued certificates of disability. Dr. Milgram found that in both of his knees plaintiff had degenerative bilateral arthritis that preexisted any duty-related incident. Dr. Milgram did not believe that the degree of arthritis in his right knee "disabled" plaintiff from work as a police officer and felt that if plaintiff were "so motivated[,] he could return to work as a police officer at the present time without restriction." Dr. Milgram did not find plaintiff to be disabled from a work-related injury and did not issue a certificate of disability.

At the evidentiary hearing on June 19, 2003, plaintiff's counsel indicated that plaintiff wanted the Board to consider his pension application as a duty-related claim only and that he was not seeking a not-on-duty disability pension. During the hearing, the medical reports of the Board's examining physicians and the medical records from plaintiff's treating physicians were admitted into evidence. Plaintiff did not object to the admission of these exhibits, including Dr. Milgram's medical report.

The Board denied plaintiff's application for a line-of-duty disability pension, finding that plaintiff had a preexisting disease unrelated to the April 20, 2002, incident. In its analysis, the Board found Dr. Milgram more credible than the other physicians and assigned greater weight to his opinion. The Board also relied on Dr. Levin's report and the extensive prior medical treatment and injuries, which indicated to the Board that plaintiff's right knee condition existed prior to the work-related incident. Citing *Rizzo*, which interpreted section 3—115 of the Pension Code to require a board to

issue a disability pension only if it receives certificates of an officer's disability from three practicing physicians selected by the board, the Board denied plaintiff a disability pension because it did not receive three certificates of disability. See *Rizzo*, 338 Ill. App. 3d at 495.

Plaintiff filed a complaint for administrative review. Following a hearing, the trial court affirmed the Board's decision, finding that because the doctors' medical reports were admitted as part of the administrative record without objection, plaintiff waived any objections to the sworn certification requirements of section 3—115. The trial court did not rule on the issues of whether the Board's decision was against the manifest weight of the evidence or legally erroneous. Rather, the trial court believed that it was bound to follow the decision in *Rizzo* because it was the only appellate court case in Illinois specifically deciding the section 3—115 issue. Accordingly, the court affirmed the Board's decision because the Board did not receive three certificates of disability from the examining physicians selected by the Board pursuant to section 3—115. Plaintiff timely appeals.

## ANALYSIS

### 1. Manifest Weight of the Evidence

As directed by the supreme court, we now first address the Board's determination that plaintiff had not proven his disability.

On appeal, we review the decision of the administrative agency, not that of the trial court. *Stec v. Board of Trustees of the Oak Park Police Pension Fund*, 355 Ill. App. 3d 974, 978-79 (2005). An administrative agency's findings of fact are deemed *prima facie* true and correct and may be set aside only if they are against the manifest weight of the evidence. 735 ILCS 5/3—110 (West 2002); *Daily v. Board of Trustees of the Police Pension Fund*, 251 Ill. App. 3d 119, 122 (1993). "Factual findings are against the manifest weight of the evidence only where all reasonable and unbiased persons would agree it is clearly evident the administrative agency erred and should have reached the opposite conclusion." *Caterpillar, Inc. v. Illinois Commerce Comm'n*, 348 Ill. App. 3d 823, 828 (2004). The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify the reversal of the administrative findings. *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070, 1076 (1997). Moreover, "because the weight of the evidence and the credibility of the witnesses are within the province of the [agency], there need only be some competent evidence in the record to support its findings." *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App. 3d 180, 184 (1992). Thus, if the record contains any evidence to support the agency's decision, it should

be affirmed. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

■ Plaintiff claims that he was entitled to a line-of-duty disability pension pursuant to section 3—114.1 of the Pension Code (40 ILCS 5/3—114.1 (West 2002)). In order to be entitled to a line-of-duty disability pension, plaintiff must prove in part that (1) he was disabled as a result of an injury incurred in or resulting from the performance of an act of duty; (2) he is physically disabled; and (3) the disabling condition renders necessary his suspension from police service. 40 ILCS 5/3—114.1 (West 2002).

■ It is undisputed that plaintiff has preexisting arthritis of his right knee. The dispute focuses on whether the April 20, 2002, accident caused a new tear to plaintiff's knee or whether the tear preexisted the accident. Four of the five physicians who examined plaintiff concluded that plaintiff was disabled as of the date of the accident. Dr. Pavlatos believed that the accident caused a new tear. Dr. Levin concurred in this conclusion. Dr. Milgram on the other hand believed that any tears preexisted the accident, and the Board found Dr. Milgram more credible, assigning more weight to his opinion. Thus, this case turns on whether the record contains any evidence to support Dr. Milgram's finding that plaintiff did not suffer a new tear to his knee when he fell down the embankment. Plaintiff argues that the evidence reveals that Dr. Milgram's finding was baseless and unreliable and that therefore the Board erred in assigning so much weight to Dr. Milgram's opinion. We agree.

Dr. Milgram's medical report submitted into evidence contains the following relevant portion:

> "I have reviewed the medical records and in no area is there a history given by the patient to his treating physicians that his knee popped when he fell down the embankment with the patient [*sic*]. Therefore, this is a new history that the patient is giving to me. The records do not show that type of an injury. He was diagnosed by his own doctor as having bilateral arthritis of both knees and the doctor felt that he might have tears of the cartilage. Indeed he did have tears of the cartilage, but as described in the operative note, they appear to be degenerative type of tears and chronic. They certainly do not appear to be like a new tear that just occurred and I think that there is a significant likelihood that the tears treated by Dr. Pavlatos are pre-existing disease and not traumatic tears caused by a new injury. I think that the patient does not have also a degree of arthritis which is disabling from work as a police officer and I feel that were he so motivated he could return to work as a police officer at the present time without restrictions."

It is clear from Dr. Milgram's report that he concluded that the accident did not cause a new tear to plaintiff's knee, because plaintiff did not report to his doctor the symptom that his knee popped when he tumbled down the embankment. Rather, Dr. Milgram felt that the tears appeared to be of a degenerative type and chronic from preexisting disease. However, the record indicates that plaintiff did in fact report to Dr. Pavlatos that he felt his knee pop when he fell down the embankment. This misstatement of the evidence shows that Dr. Milgram either selectively disregarded, failed to recall, or never reviewed portions of plaintiff's medical records. Thus, he disregarded evidence that supports the finding that plaintiff suffered a new tear. We find it particularly troubling that, although he stated that he reviewed plaintiff's "medical records," nowhere in his report did Dr. Milgram indicate that he specifically examined the MRI taken by Dr. Pavlatos following plaintiff's accident. Furthermore, Dr. Milgram based his finding that plaintiff is not disabled on his beliefs that plaintiff "does not have a degree of arthritis which is disabling from work as a police officer" and that he lacks motivation. This "lack of motivation analysis" is vague and has no scientific basis in fact because the report does not consider, as the other examining physicians did, plaintiff's current symptoms regarding the use of his knee, *i.e.*, that his knee locks occasionally, that he experiences some pain in his knee when he climbs up and down stairs, and that his knee swells and feels tender when he does any strenuous activities. Dr. Milgram's opinion also fails to account for how these symptoms might affect plaintiff's work as a full-duty police officer. Dr. Milgram was not credible, because his conclusions were inconsistent with the facts available to him. We find that the Board erred in assigning greater weight to Dr. Milgram's opinion, because he failed to consider or to base his opinion on relevant, material evidence that was key under the circumstances of this case. Accordingly, we find that the Board's decision is against the manifest weight of the evidence.

Moreover, contrary to the Board's argument, we believe that escorting a prisoner constitutes being "on duty" within the ambit of section 3—114.1 of the Pension Code. Section 5—113 of the Pension Code defines an "act of duty," in pertinent part, as "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment." 40 ILCS 5/5—113 (West 2002). Escorting a prisoner is not an act assumed by an ordinary citizen.

Four out of five doctors found plaintiff to be disabled due to the

injury to his knee and attributed his present condition to the April 20, 2002, incident. Dr. Pavlatos stated that plaintiff's preexisting condition was aggravated by the accident. Dr. Levin opined that there was an aggravation from the accident that is now preventing plaintiff from returning to full-duty work. The Pension Code states that the debilitating injury must have been incurred by or must have resulted from the performance of an act of duty. *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818 (1993). There is no requirement that the duty-related incident be the originating or primary cause of the injury, although a sufficient nexus between the injury and the act of duty must exist. *Barber*, 256 Ill. App. 3d at 818. The reports of Drs. Pavlatos and Levin establish the nexus. Thus, even if plaintiff did suffer from a preexisting condition, he would nevertheless be entitled to a line-of-duty disability pension because the injury that caused his inability to work occurred while he was on duty.

In *Coyne*, the board denied the plaintiff a line-of-duty disability pension but failed to articulate its reasons. The Appellate Court, Third District, remanded the cause, explaining that the standard of review gives the board the benefit of the doubt, but, with no articulation of the findings upon which the board based its determination, a reviewing court could not extend that benefit in an informed manner. The appellate court concluded that "[a]n administrative agency's prerogative undoubtedly includes making credibility determinations between doctors who render competing opinions. But when the evidence weighs heavily against a single doctor, and the agency chooses to adopt that doctor's opinion, the agency must articulate the findings underlying its choice to facilitate meaningful review." *Coyne*, 347 Ill. App. 3d at 724. Accordingly, the appellate court believed that the appropriate course would be to remand the cause with instructions for the board to articulate its findings so that the appellate court could effectuate meaningful review. *Coyne*, 347 Ill. App. 3d at 724. In the present case, the Board did articulate its findings and we can effectuate meaningful review because it is apparent from the record that Dr. Milgram overlooked key medical evidence in formulating his opinions as to the cause of plaintiff's injury and to his lack of disability. Our examination leads us to conclude that the Board erred in assigning so much weight to Dr. Milgram's opinion. Accordingly, the Board's finding that plaintiff was not entitled to a line-of-duty disability pension in accordance with section 3—114.1 of the Pension Code was against the manifest weight of the evidence.

### 2. Section 3—115

We turn now to the issue of whether section 3—115 of the Pension

Code mandates that a pension board deny disability benefits unless all three examining physicians selected by the board certify that the applicant is disabled. We allowed the Hoffman Estates Police Pension Fund to file an *amicus curiae* brief in support of plaintiff.

Plaintiff and *amicus curiae* do not agree with *Rizzo*'s interpretation of the statute and assert that, while a pension board must have three certificates from its selected doctors, all three certificates do not need to find the applicant disabled for the board to award a disability pension. Relying on the recent decision of *Coyne*, plaintiff and *amicus curiae* contend that the statute requires three medical certificates addressing an applicant's *disability status*. Therefore, they assert, even though one doctor did not certify that plaintiff was disabled, plaintiff could still obtain a pension.

■ We begin by citing the statute, our standard of review, and the relevant statutory guidelines.

Section 3—115 of the Pension Code provides in relevant part:

"Certificate of disability. A disability pension shall not be paid unless there is filed with the board certificates of the police officer's disability, subscribed and sworn to by the police officer if not under legal disability, *** and by the police surgeon (if there be one) and 3 practicing physicians selected by the board. The board may require other evidence of disability." 40 ILCS 5/3—115 (West 2002).

In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2002)), we review the agency's decision and not the trial court's determination. *Martino v. Police Pension Board*, 331 Ill. App. 3d 975, 979 (2002). When the issue is one of law only, we review the agency's decision *de novo. Martino*, 331 Ill. App. 3d at 980. Here, review is *de novo* because this case involves a question of statutory interpretation. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). However, we give substantial weight and deference to an agency's interpretation of a statute it enforces. *Village of Franklin Park v. Illinois State Labor Relations Board*, 265 Ill. App. 3d 997, 1001 (1994).

In interpreting a statute, the court must ascertain the legislature's intent, which is found in the plain and ordinary meaning of the language used in the statute. *Land*, 202 Ill. 2d at 421. Where the statutory language is clear, the court will give that language effect without resort to other aids of construction. *Martino*, 331 Ill. App. 3d at 980.

In *Rizzo*, two of the three board-selected doctors who examined Rizzo submitted reports finding that Rizzo was disabled and unable to return to his job as a police officer. The third physician found that,

while Rizzo was impaired, he was not disabled and could return to full, unrestricted police duties. The first two physicians submitted reports of their opinions. The third physician submitted a certificate stating that Rizzo was not disabled. Similar to the present case, in denying Rizzo a disability pension, the pension board afforded more weight to the physician's opinion that Rizzo was not disabled. The board also denied Rizzo's application for benefits pursuant to section 3—115 because the third physician certified that Rizzo was not disabled. *Rizzo*, 338 Ill. App. 3d at 491-93. On administrative review, the trial court reversed and remanded because one of the doctors finding disability had not submitted a sworn certificate as required under section 3—115. On remand, the board noted that it had received the second doctor's certificate certifying Rizzo was disabled. Rizzo filed another complaint for review. The trial court reversed again, finding, *inter alia*, that the board improperly interpreted section 3—115.

On appeal, the First District Appellate Court held that the board properly interpreted section 3—115 because the language of the statute clearly states that a police officer cannot obtain a disability pension unless a board receives certificates from three practicing physicians, selected by the board, stating that the officer is disabled. The court noted that the board may require "other evidence" of the officer's disability, or evidence in addition to the three certified statements from the board's selected physicians that the applicant is disabled. *Rizzo*, 338 Ill. App. 3d at 494. Because one of the three physicians selected by the board to examine Rizzo did not certify that he had a disability, the board could not award Rizzo a disability pension. Therefore, the appellate court concluded that the board properly denied Rizzo's application for disability pension benefits. *Rizzo*, 338 Ill. App. 3d at 495.

In *Daily*, 251 Ill. App. 3d 119, the plaintiff argued that the case should be remanded to obtain proper certification because the three physicians selected by the board to examine the plaintiff did not certify that he had a disability. The Fourth District Appellate Court held that, based on the statute, without the three physicians' certifications that the plaintiff had a disability, the board could not give the plaintiff a disability pension. *Daily*, 251 Ill. App. 3d at 126.

The plaintiffs in *Rizzo* and *Daily* both relied on *Caauwe v. Police Pension Board*, 184 Ill. App. 3d 482 (1989), for the proposition that physicians' certificates are required from three doctors to establish *either* an applicant's disability *or* the lack thereof. In *Caauwe*, the pension board denied disability benefits based on unverified and unsworn medical evidence. The plaintiff asserted that certification by three doctors that he was not disabled was mandatory to deny benefits under

section 3—115, and because the doctors' reports lacked the certification of his disability, the cause should be remanded for such certification. The appellate court agreed and held that section 3—115 mandated that the board select three practicing physicians to furnish subscribed and sworn-to certifications of the applicant's disability status. Accordingly, the court reversed and remanded for the board to receive three doctors' certifications of the plaintiff's disability or lack thereof. *Caauwe*, 184 Ill. App. 3d at 484-86.

*Daily* and *Rizzo* found that, under the clear language of section 3—115, certification of an applicant's disability is required only when a board will be providing benefits, not when it is going to deny benefits. *Rizzo*, 338 Ill. App. 3d at 494-95; *Daily*, 251 Ill. App. 3d at 127. To the extent that *Caauwe* mandates certification of an applicant's disability prior to denying benefits, both courts found it to be a contradiction of the express language of the statute and declined to follow *Caauwe*. *Rizzo*, 338 Ill. App. 3d at 495; *Daily*, 251 Ill. App. 3d at 127.

Plaintiff and *amicus curiae* rely on the recent Third District Appellate Court decision in *Coyne* to support their argument that the statute does not require three certificates of disability furnished by doctors selected by the pension board for the board to grant a disability pension. In *Coyne*, as here, the board interpreted the language of section 3—115 as requiring a unanimous declaration from its three appointed doctors that Coyne was disabled for police work, and since one doctor selected by the board opined that Coyne was not so disabled, the board summarily denied him benefits. *Coyne*, 347 Ill. App. 3d at 727.

The trial judge disagreed with the board's interpretation of section 3—115, finding the relevant statutory language to be ambiguous. The judge construed section 3—115 as requiring three medical certificates addressing Coyne's *disability status*. Because all three of the certificates met this standard, the judge concluded that the one doctor's opinion that Coyne was not disabled did not *ipso facto* disqualify Coyne from receiving pension benefits. *Coyne*, 347 Ill. App. 3d at 727-28.

The Third District Appellate Court agreed with the judge's conclusion. The focus of its analysis centered on the meaning of the qualifying label "of disability." The court found 21 nuances for the word "of," ranging from " '[c]entering on' " to " '[i]n respect to,' " which the court felt injected ambiguity into the pivotal statutory language. *Coyne*, 347 Ill. App. 3d at 728. The court believed that these various definitions could easily encompass a certificate addressing an applicant's *disability status* generally, regardless of the doctor's ultimate opinion about whether the applicant can perform police work. *Coyne*, 347 Ill. App. 3d at 728.

The court also expressed its concern over the meaning of the word "disability" because the statute says nothing about the degree of the person's incapacity. The court pointed out that in section 3—114.2 of the Pension Code (40 ILCS 5/3—114.2 (West 1996)), the legislature recognized the varying degrees of disability. After a police officer suffers a disability, the pension board decides whether the degree of the disability is sufficient to trigger pension benefits. However, in the certificate provision of section 3—115, the legislature referenced "disability" in a general fashion without elevating the term as it did in section 3—114.2. The *Coyne* court believed that this fact, combined with the range of definitions for the word "of," resulted in ambiguity regarding the content of the required certificates. *Coyne*, 347 Ill. App. 3d at 728-29.

The court found that to uphold the board's interpretation of section 3—115 would yield a result that would be both absurd and unconstitutional. The court asserted that, if the board's interpretation were carried to its logical conclusion, then, as a threshold matter in all cases, the three physicians required by section 3—115 would each have to certify that the applicant was disabled for police work, and the opinion of a lone minority dissenter would *ipso facto* defeat a pension claim, rendering section 3—115 a virtual summary dismissal provision. *Coyne*, 347 Ill. App. 3d at 729. The court pointed out that the evidentiary hearing would be rendered useless because, regardless of the weight of the applicant's evidence, the outcome would be predetermined by the mere existence of a disagreement between witnesses. *Coyne*, 347 Ill. App. 3d at 729. The court further pointed out that due process requires adequate notice and a hearing, but the board's interpretation precluded a hearing and effectively turned the decision over to the three physicians selected by the board rather than to the trier of fact. *Coyne*, 347 Ill. App. 3d at 729.

Justice Schmidt did not agree with the majority's rationale in *Coyne*. In his dissent, he asserted that the issue centered around what the legislature meant when it referred to the term " 'certificates of the police officer's disability.' " *Coyne*, 347 Ill. App. 3d at 730 (Schmidt, J., dissenting). He believed that the majority tortured the word "of" in a " 'Clintonesque' fashion" to make the term ambiguous. He found nothing ambiguous about the term, that it plainly refers to certificates stating that the police officer is disabled in one form or another. *Coyne*, 347 Ill. App. 3d at 731 (Schmidt, J., dissenting). Justice Schmidt pointed out that a reading of the statute under the majority's line of reasoning would render an absurd result because it would allow the board to pay a disability pension to a police officer where every certificate on file, including the officer's, indicated that he was *not* disabled. *Coyne*, 347 Ill. App. 3d at 731 (Schmidt, J., dissenting).

We agree with Justice Schmidt's dissent as well as the reasoning in *Rizzo* and *Daily*, which have construed the statute to mean what it says. We find nothing equivocal about the term "certificates of the police officer's disability." "Disability" is defined as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." 40 ILCS 5/5—115 (West 2002). Accordingly, we see no need to certify the *degree* of an applicant's disability. Under the clear meaning of section 3—115, three physicians selected by the board must furnish certification that the applicant has a disability preventing him from performing any assigned duty or duties in the police service. This shows the legislature's intent to require very strong proof before the board issues a disability pension.

Furthermore, contrary to the argument raised in *Coyne* and relied on by plaintiff and *amicus curiae*, we do not find that the Board's interpretation yields an absurd or unconstitutional result. If three certificates are filed establishing disability, the issue then becomes whether the disability was caused by a noncovered act or a covered act. If the Board determines that the disability was caused by a covered act, then the Board must determine the type and amount of pension the applicant receives. See 40 ILCS 5/114.1, 114.2 (West 2002). Thus, there is a rationale as to why the statute states that there may be other evidence presented on point, especially if the certificates of disability are inconsistent as to the cause of the disability.

We note that, although Coyne was not certified by three physicians selected by the board, a fourth physician, a psychiatrist who was referred by one of the selected physicians, stated that Coyne could not work as a police officer. Thus, consistent with Justice Schmidt's dissent, we see nothing in the statute to preclude an applicant from requesting a board to appoint a fourth physician to examine him in an effort to secure the necessary three certificates of disability. *Coyne*, 347 Ill. App. 3d at 732 (Schmidt, J., dissenting). Finally, we point out that the medical examination requirements in the Pension Code are antifraud provisions, and they serve the legitimate legislative goal of ensuring the integrity of the pension fund. *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 799 (2000).

Because we find the language clear, there is no need to resort to other interpretive aids. See *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994) (where the enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express). The statute as clearly written should be enforced. See *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997) (if legislative intent can be

ascertained from a statute's plain language, that intent must prevail without resort to other interpretive aids).

Plaintiff believes that *Rizzo* is distinguishable from his case, based on a number of other grounds. Plaintiff asserts that Rizzo sought a nonduty disability pension rather than a line-of-duty disability pension like plaintiff. We find this to be a distinction without a difference. It is not the type of disability that is pivotal to the issue under section 3—115. Rather, it is whether three physicians selected by the board have certified that the applicant has a disability.

Plaintiff further contends that in *Rizzo* all three doctors filed certificates regarding Rizzo's disability one way or the other, while here, Dr. Milgram did not issue a certificate at all. Of importance here, as in *Rizzo*, is that only two of the three physicians certified plaintiff as disabled. Furthermore, regardless of the distinction between the facts, it is the Board's interpretation of section 3—115 and its application to the facts that is relevant to our disposition.

Both plaintiff and *amicus curiae* believe that the First District Appellate Court case of *Knight v. Village of Bartlett*, 338 Ill. App. 3d 892 (2003), contradicts its decision and analysis in *Rizzo*. *Knight* neither addresses the decision in *Rizzo* nor does it construe section 3—115. Rather, in *Knight*, two doctors selected by the board concluded that Knight was permanently disabled and unfit for duty as a police officer, and the third doctor concluded that Knight had a " 'lack of fitness for duty' " but was not psychologically disabled. *Knight*, 338 Ill. App. 3d at 900. The appellate court noted that the record indicated that the doctor used the phrase "lack of fitness for duty" to describe Knight as no longer being capable of performing the duties of a police officer, and the court concluded that "lack of fitness" was synonymous with "unfit." *Knight*, 338 Ill. App. 3d at 900. Because all three examining physicians essentially reached the same conclusion that Knight was disabled, the court reversed the board's decision denying a disability pension as against the manifest weight of the evidence. The court never addressed the issue here: whether the lack of a third certificate under section 3—115 precludes an applicant from receiving a disability pension.

### 3. Fair and Impartial Hearing

■ Plaintiff and *amicus curiae* imply that a pension board can select a practicing physician whom the board knows will not certify an applicant as disabled, in order to deny the applicant a disability pension. We presume that persons who serve on administrative tribunals are fair and honest. See *Jackson v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 293 Ill. App. 3d 694,

699 (1997). Plaintiff did not offer any evidence of bad faith here. In the absence of any such evidence, we will not presume that the Board acted arbitrarily or in bad faith. However, if an applicant presented such proof, then a board's decision could be reversed and the cause remanded with directions to appoint a fourth physician to examine the applicant. We note that because we have addressed this issue, we deny the Board's motion, taken with the case, to strike plaintiff's argument regarding whether he received a fair and impartial hearing.

■ In summary, by the plain, express language of section 3—115, the legislature clearly requires that certificates of disability be filed by three practicing physicians selected by a board before a police officer is entitled to disability benefits. Here, since the three physicians chosen by the Board did not file certificates of disability, plaintiff is not entitled to disability benefits. Before we could rule for plaintiff, we would have to rewrite the statute to allow the Board more flexibility with respect to the certificates of disability. However, we cannot rewrite the statute. Rather, it is our task to interpret and apply it in the manner in which it was written. *In re Estate of Schlenker*, 209 Ill. 2d 456, 466 (2004). As Justice Cardozo stated: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take this statute as we find it." F. Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947). Because we must take it as we find it, the clear, express language of the statute compels us to affirm. The language of the statute is plain and has only one meaning. Thus, the duty of interpretation does not arise. If the legislature intends the courts to interpret section 3—115 as plaintiff does, it should make the necessary statutory changes.

For the preceding reasons, although we find the Board's determination that plaintiff was not entitled to a line-of-duty disability pension in accordance with section 3—114.1 of the Pension Code against the manifest weight of the evidence, we affirm the Board's decision based on the application of section 3—115 denying plaintiff disability pension benefits because the Board did not receive three certificates of disability.

Affirmed.

McLAREN, J., concurs.

JUSTICE BOWMAN, dissenting:

I respectfully dissent in part and concur in part. I concur in the majority's analysis and decision that the Board's finding that plaintiff

had not proven grounds for a line-of-duty disability pension in accordance with section 3—114.1 of the Illinois Pension Code (Code) (40 ILCS 5/3—114.1 (West 2002)) is against the manifest weight of the evidence. However, I disagree with the majority's finding that section 3—115 of the Code (40 ILCS 5/3—115 (West 2002)) requires three practicing physicians, selected by the Board, to certify the police officer's disability and with its consequential finding affirming the Board's decision to deny plaintiff's application for disability benefits.

I believe that the majority decision in *Coyne v. Milan Police Pension Board ex rel. Jones*, 347 Ill. App. 3d 713, 727-30 (2004), analyzing section 5, "Physicians' Certificates of Disability," correctly interprets section 3—115 of the Code (40 ILCS 5/3—115 (West 2002)). Consequently, I would reverse the Board's decision to deny plaintiff disability pension benefits because the Board did not receive three physician certificates of disability.