No. 2--06--1163          Filed: 3-18-08

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ROGER SZEWCZYK, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 05--MR--138 |
| | ) | |
| THE BOARD OF FIRE AND POLICE | ) | |
| COMMISSIONERS OF THE VILLAGE | ) | |
| OF RICHMOND, ILLINOIS, and its | ) | |
| Commissioner Members, THOMAS | ) | |
| VAN DAELE, KEVIN THOMAS, and | ) | |
| KENNETH WERZEK, | ) | Honorable |
| | ) | Maureen McIntyre, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Roger Szewczyk, served as a sergeant in the Village of Richmond (Village) police department from 1995 to 1999. In 1999, Kevin Brusek, then the Village president, appointed him police chief. In 2005, Brusek sent plaintiff a letter announcing that he was "terminated" from office. After three votes, the five members of the Village board of trustees voted four to one to end plaintiff's employment.

Plaintiff asked the new Village president, Lauri Olson, and defendants, the Board of Fire and Police Commissioners of the Village of Richmond (Commissioners) and its members, Thomas Van Daele, Kevin Thomas, and Kenneth Werzek, to be reappointed as police chief. He also submitted a petition for a hearing before the Commissioners to restore him to the rank of sergeant. Olson and

the Commissioners declined the requests. Plaintiff filed a complaint for mandamus, requesting the circuit court to direct the Commissioners to conduct a hearing on the petition. The parties filed opposing motions for summary judgment, and the trial court ruled for plaintiff.

The Commissioners appeal, arguing that they are entitled to summary judgment and that plaintiff is not. The Commissioners frame the issues by comparing sections 10--2.1--4 and 10--2.1--17 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/10--2.1--4, 10--2.1--17 (West 2006)) to section 3.1--35--10 of the Municipal Code (65 ILCS 5/3.1--35--10 (West 2006)) and ordinance No. 3.01(e) of the Village of Richmond Code (Village Code) (Richmond Village Code Ordinance No. 3.01(e) (2004)). Sections 10--2.1--4 and 10--2.1--17 of the Municipal Code govern the removal of a police chief in particular, and section 3.1--35--10 and ordinance No. 3.01(e) govern the removal of municipal officers in general. The Commissioners argue that the specific provisions, rather than the general provisions, apply. They further contend that Brusek and the board of trustees complied with all of the provisions and, therefore, plaintiff is not entitled to a hearing on his petition to be restored to his prior rank of sergeant. While we agree with the Commissioners that the specific provisions apply, we conclude that plaintiff was denied the procedural due process afforded under both schemes. We further conclude that the trial court properly granted plaintiff mandamus directing the Commissioners to hear his petition.

FACTS

On July 5, 2005, plaintiff filed a complaint for mandamus, asking the circuit court to direct the Commissioners to conduct a hearing on plaintiff's petition for reinstatement to the rank of sergeant. When the parties filed opposing motions for summary judgment, they also filed an agreed statement of facts and supporting documents.

In 1990, the Commissioners appointed plaintiff as a full-time, sworn police officer of the Village police department. In 1995, plaintiff was appointed to the rank of sergeant. In 1999, Brusek appointed plaintiff as police chief. At the time of his appointment as police chief, plaintiff was 49 years old and was not eligible for full pension benefits, because he had not yet reached the eligibility age of 55.

As of December 31, 2004, plaintiff was a participating employee and a member in good standing of the Illinois Municipal Retirement Fund (IMRF). Also as of that date, plaintiff was eligible to retire on partial pension benefits through the IMRF under section 7--141 of the Illinois Pension Code (Pension Code) (40 ILCS 5/7--141 (West 2006)). However, plaintiff was to become eligible for full benefits when he reached his fifty-fifth birthday on April 29, 2005.

On March 15, 2005, Brusek sent the board of trustees a memorandum that stated, "[a]s of 10:00 this morning; Chief Roger Szewczyk's employment with the Village of Richmond was terminated. There will be an Executive Session tomorrow evening with further details." The minutes of the March 16, 2005, executive session indicate that the Village trustees took no action on the termination.

On March 21, 2005, Brusek sent Karla Thomas, the Village clerk, and Lisa Waggoner, the Village attorney, a letter explaining that Brusek had attempted to suspend plaintiff on March 15, but, when plaintiff declared that he could not be suspended, Brusek "fired" him. Brusek's letter to the clerk and the attorney included his reasons for the termination, including insubordination, failure to investigate and report official misconduct, failure to meet budgetary goals, failure to exercise management and leadership skills, and inability to work with other municipal entities.

On March 23, 2005, the board of trustees held a special meeting at which it debated plaintiff's termination. Initially, two trustees voted for termination and three voted against it. The board of trustees then debated placing plaintiff on administrative leave with pay. Four trustees voted to place plaintiff on leave until April 6, 2005, and one voted against it. Following the meeting, Brusek sent plaintiff a letter informing him that he had been placed on administrative leave, but the letter did not state the duration. Brusek ordered plaintiff to turn in his badge, his nameplate, and all other equipment that belonged to the Village. Brusek informed plaintiff that he could not carry a weapon or act as a police officer. Brusek sent a copy of the letter to the Commissioners, the board of trustees, and Waggoner.

On April 6, 2005, the board of trustees held a regular meeting. At Brusek's invitation, Village president-elect Olson joined the executive session at which plaintiff's status was discussed further. Four of the five trustees voted to terminate plaintiff, effective April 30, 2005, one day after his fifty-fifth birthday.

On April 30, 2005, Brusek sent plaintiff a letter informing him of the termination. Brusek sent copies of the letter to the Commissioners, the board of trustees, and Waggoner. The letter provided as follows:

> "You have been on paid Administrative Leave through April 30, 2005, and received all benefits through this date. As of April 30th you are separated from employment with the Village of Richmond and you are free to take your retirement. Enclosed you will find a check for your unused vacation and sick days. Also enclosed is a copy of the COBRA plan for medical insurance."

On May 4, 2005, Olson assumed office as Village president. On May 11, 2005, plaintiff's counsel sent the Commissioners a petition for a hearing to reinstate plaintiff to his previous rank of sergeant, and, the next day, counsel sent the petition to Olson.

At no time did either Brusek or the board of trustees ask plaintiff to appear or otherwise answer the allegations that were the basis for his termination. Plaintiff asked to appear before the board of trustees, but the request was denied. Besides filing the petition for reinstatement to his previous rank, plaintiff did not ask to appear before the Commissioners to answer the allegations, and they did not ask him to do so.

Plaintiff filed his complaint for mandamus on July 5, 2005, and the trial court ruled on the opposing motions for summary judgment on August 22, 2006. The court entered a seven-page memorandum opinion and order, denying the Commissioners' motion and granting plaintiff summary judgment. The court concluded that Brusek's attempt to terminate plaintiff was defeated when the board of trustees voted to place plaintiff on administrative leave, thereby restoring plaintiff to his position as police chief. The court found that, when the board of trustees revisited the issue and voted to "confirm the removal" of plaintiff as police chief, it did not comply with the statutory requirements. According to the court, plaintiff neither resigned nor was effectively discharged, and therefore he is entitled to a hearing before the Commissioners regarding the restoration to his position as sergeant.

The Commissioners filed a motion to reconsider, and the trial court denied it on October 18, 2006. The Commissioners filed a timely notice of appeal on November 16, 2006.

ANALYSIS

Initially, we address the Commissioners' argument that we must strike plaintiff's brief for noncompliance with Supreme Court Rules 341(e)(7) and (f) (177 Ill. 2d Rs. 341(e)(7), (f)). The Commissioners contend that the brief's argument section is "unintelligible" and "does not contain clear, discernable argument" and that therefore it must be stricken. The current Rule 341(e) (210 Ill. 2d R. 341(e)) does not contain a subsection (7), and Rule 341(f) (210 Ill. 2d R. 341(f)) governs references to parties. We surmise that the Commissioners intend to cite to current Rules 341(h)(7) and (i). Rule 341(i) provides that the requirements for the argument section of an appellant's brief also apply to the appellee's brief. 210 Ill. 2d R. 341(i). Rule 341(h)(7) provides that the argument section "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal or abstract, if any, where evidence may be found. Citation of numerous authorities in support of the same point is not favored. Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 210 Ill. 2d R. 341(h)(7). While we agree with the Commissioners that plaintiff's brief is inartful, we recognize that the issues are numerous and complex. We decline to strike plaintiff's brief or impose any other sanction for noncompliance with Rule 341.

On appeal, the Commissioners argue that they are entitled to summary judgment. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2--1005(c) (West 2006). Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992). A circuit court's entry of summary judgment is subject to de novo review. General Agents Insurance Co. of America, Inc. v. Midwest

Sporting Goods Co., 215 Ill. 2d 146, 153 (2005). "As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law." Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335, 339 (2005).

Plaintiff sought a writ of mandamus to compel the Commissioners to grant him a hearing on his petition for restoration to the rank of sergeant. Mandamus is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. Lee v. Findley, 359 Ill. App. 3d 1130, 1133 (2005). "A mandamus action is not an appropriate means for seeking judicial review of an administrative proceeding." Newsome v. Prisoner Review Board, 333 Ill. App. 3d 917, 920 (2002). "Mandamus cannot be used to direct a public body to reach a particular decision or to exercise its discretion in a particular manner." Jamison v. City of Zion, 359 Ill. App. 3d 268, 271 (2005). Mandamus will issue only where the plaintiff has fulfilled his burden (Mason v. Snyder, 332 Ill. App. 3d 834, 840 (2002)) to set forth every material fact needed to demonstrate that (1) he has a clear right to the relief requested, (2) there is a clear duty on the part of the defendant to act, and (3) clear authority exists in the defendant to comply with an order granting mandamus relief. Baldacchino v. Thompson, 289 Ill. App. 3d 104, 109 (1997).

On appeal, the Commissioners distinguish sections 10--2.1--4 and 10--2.1--17 of the Municipal Code (65 ILCS 5/10--2.1--4, 10--2.1--17 (West 2006)), which govern the removal of a police chief, from section 3.1--35--10 of the Municipal Code (65 ILCS 5/3.1--35--10 (West 2006)) and ordinance No. 3.01(e) of the Village Code, which govern the removal of municipal officers generally. The primary rule of statutory construction is to ascertain and give effect to the intent of

the legislature. In re Marriage of Rogers, 213 Ill. 2d 129, 136 (2004). The plain language of the statute is the best indicator of the legislature's intent, and, when that language is clear, its meaning will be given effect without resort to other tools of interpretation. Metzger v. DaRosa, 209 Ill. 2d 30, 34 (2004). Municipal ordinances are interpreted using the general rules of statutory interpretation and construction. Puss N Boots, Inc. v. Mayor's License Comm'n, 232 Ill. App. 3d 984, 986 (1992).

### A. Appointment to Office

We explore the statutes and ordinances that authorized plaintiff's appointment to office because they lay the foundation for his contested removal and potential restoration to his previous rank. The following illustrates how the Village Code was harmonized with the Municipal Code to authorize Brusek, acting as the Village president, to appoint plaintiff as police chief.

Section 3.1--30--5 of the Municipal Code authorizes the appointment of corporate officers in general. Section 3.1--30--5(a) provides in relevant part as follows:

"(a) The mayor or president, as the case may be, by and with the advice and consent of the city council or the board of trustees, may appoint (1) a treasurer (if the treasurer is not an elected position in the municipality), (2) a collector, (3) a comptroller, (4) a marshal, (5) an attorney or a corporation counsel, (6) one or more purchasing agents and deputies, (7) the number of auxiliary police officers determined necessary by the corporate authorities, (8) police matrons, (9) a commissioner of public works, (10) a budget director or a budget officer, and (11) other officers necessary to carry into effect the powers conferred upon municipalities." (Emphasis added.) 65 ILCS 5/3.1--30--5(a) (West 2006).

Section 3.1--30--5(a) does not expressly prescribe the appointment of a police chief, but it authorizes a village president to appoint officers necessary to carry out the powers of the municipality. The parties do not dispute that a police chief qualifies as a necessary officer.

While section 3.1--30--5(a) applies to municipal officers generally, section 10--2.1--4 of the Municipal Code expressly addresses the appointment of a police chief. Section 10--2.1--4 provides in part that "[t]he board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide; except as otherwise provided in this Section, and except that in any municipality which adopts or has adopted this Division 2.1 and also adopts or has adopted Article 5 of this Code, the chief of police and the chief of the fire department shall be appointed by the municipal manager, if it is provided by ordinance in such municipality that such chiefs, or either of them, shall not be appointed by the board of fire and police commissioners." 65 ILCS 5/10--2.1--4 (West 2006).

In this case, the Village enacted ordinance No. 3.13(B) to establish that the village president, rather than the Commissioners, has the authority to appoint the police chief. Ordinance No. 3.13(B) provides in part that "[t]he Chief of Police shall be appointed by the Village President with the advice and consent of the Board of Trustees on such terms and conditions as they may fix by ordinance, resolution or written agreement with such person." Richmond Village Code Ordinance No. 3.13(B) (2004). Ordinance No. 3.13(A) further provides that the police chief shall also serve as the village marshal. Richmond Village Code Ordinance No. 3.13(A) (2004).

Here, there is no dispute that Brusek adhered to the Municipal Code and the Village ordinances in appointing plaintiff as police chief in 1999. However, the applicability of the removal provisions are hotly contested.

B. Removal from Office and Restoration to Previous Rank

Sections 10--2.1--4 and 10--2.1--17 of the Municipal Code govern the removal of a police chief specifically, and section 3.1--35--10 and ordinance No. 3.01(e) govern the removal of municipal officers generally. For the following reasons, we agree with the Commissioners that the two schemes conflict. When we interpret legislative intent, specific provisions control over more general provisions. Knolls Condominium Ass'n v. Harms, 202 Ill. 2d 450, 459 (2002). However, the statutes should be construed in harmony with each other if at all possible so that no provisions are rendered inoperative. Knolls, 202 Ill. 2d at 458-59. Regardless of the conflict, we conclude that Brusek, the board of trustees, and the Commissioners failed to comply with either scheme, and therefore plaintiff is entitled to summary judgment on his complaint for mandamus.

1. Sections 10--2.1--4 and 10--2.1--17 of the Municipal Code

Sections 10--2.1--4 and 10--2.1--17 of the Municipal Code are similar in prescribing a procedure for removing a police chief. Section 10--2.1--4 provides in part as follows:

"If the chief of the fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such case the appointing authority shall file with the corporate authorities the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities.

If a member of the department is appointed chief of police or chief of the fire department prior to being eligible to retire on pension, he shall be considered as on furlough from the rank he held immediately prior to his appointment as chief. If he resigns as chief or is discharged as chief prior to attaining eligibility to retire on pension, he shall revert to and be established in whatever rank he currently holds, except for previously appointed positions, and thereafter be entitled to all the benefits and emoluments of that rank, without regard as to whether a vacancy then exists in that rank." 65 ILCS 5/10--2.1--4 (West 2006). Section 10--2.1--17 provides in part as follows:

"Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. ***

If the chief of the fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such case the appointing authority shall file with the corporate authorities the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities. The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time. In case an officer or member is found guilty, the board may discharge him, or may suspend him not exceeding 30 days without pay. The board may suspend any officer or member pending the hearing with or without pay, but not to exceed 30 days. If the Board of Fire and Police Commissioners determines that the charges are not

sustained, the officer or member shall be reimbursed for all wages withheld, if any." 65 ILCS 5/10--2.1--17 (West 2006).

Plaintiff was appointed police chief before becoming eligible to retire on pension, and therefore he was considered to be on furlough from the rank of sergeant, which was the rank he held immediately before the appointment. See 65 ILCS 5/10--2.1--4 (West 2006). When Brusek informed plaintiff of his termination on March 15, 2005, Brusek was required to file with the corporate authorities the reasons for the removal. See 65 ILCS 5/10--2.1--4, 10--2.1--17 (West 2006). Brusek fulfilled the notification requirement by letter to the Village clerk and Village attorney on March 21, 2005.

To become effective, any removal or discharge under sections 10--2.1--4 and 10--2.1--17 must be "confirmed by a majority vote of the corporate authorities." 65 ILCS 5/10--2.1--4, 10--2.1--17 (West 2006). At the special meeting on March 23, 2005, the board of trustees held two votes on plaintiff's status. The first resulted in three votes against the termination and two votes in favor of it. Thus, a majority of the board of trustees did not vote to confirm the termination, and the termination did not become effective under sections 10--2.1--4 and 10--2.1--17. See 65 ILCS 5/10--2.1--4, 10--2.1--17 (West 2006). The second resulted in four votes in favor of placing plaintiff on administrative leave and one vote against it. Plaintiff was informed that he had been placed on administrative leave.

At the regular meeting on April 6, 2005, the board of trustees revisited the issue of plaintiff's status. Four trustees voted to end plaintiff's employment and one voted against the termination. Thus, under sections 10--2.1--4 and 10--2.1--17, the termination was confirmed by a majority vote

of the corporate authorities and became effective. See 65 ILCS 5/10--2.1--4, 10--2.1--17 (West 2006).

However, the confirmation of the termination by the board of trustees triggered an obligation of the Commissioners to conduct "a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time." 65 ILCS 5/10--2.1--17 (West 2006). A police chief, or any other officer, may be suspended for up to 30 days or discharged only after the Commissioners find him "guilty" of the charges. Plaintiff was never afforded such a hearing at which the Commissioners could render such a finding, and therefore plaintiff was denied his right to procedural due process under section 10--2.1--17. See 65 ILCS 5/10--2.1--17 (West 2006). The denial of a hearing is properly remedied through mandamus because plaintiff has clearly established that (1) he has a clear right to a hearing before the Commissioners, (2) there is a clear duty on the part of the Commissioners to conduct the hearing, and (3) clear authority exists in the Commissioners to comply with an order granting mandamus relief. See Baldacchino, 289 Ill. App. 3d at 109.

The Commissioners argue that, under section 10--2.1--4 of the Municipal Code, plaintiff neither "resigned" nor was "discharged" and, therefore, he may not revert to his former rank of sergeant. "Discharge" means "[t]o dismiss from employment; to terminate the employment of a person." Black's Law Dictionary 463 (6th ed. 1990). Brusek used several terms other than "discharge" in describing the proposed change in plaintiff's status. On March 15, 2005, Brusek informed the board of trustees that plaintiff's employment was "terminated." On March 21, 2005, Brusek informed the Village clerk and the Village attorney that plaintiff had been "fired." Brusek later informed plaintiff that, as of April 30, 2005, he was "separated from employment with the

Village of Richmond." While Brusek used various terms, his intent was unmistakable: Brusek wished to remove plaintiff from the office of police chief and discharge him under section 10--2.1--4.

The Commissioners further argue that plaintiff was eligible for his pension at the time of his termination and that section 10--2.1--4 of the Municipal Code does not permit him to revert to his former rank, because he neither resigned nor was discharged before "attaining eligibility to retire on pension." 65 ILCS 5/10--2.1--4 (West 2006). In fact, plaintiff was eligible for only partial pension benefits at the time of his termination, but he was entitled to his full pension benefits on April 30, 2005, the date the termination became effective. However, as discussed, plaintiff was denied his right to a hearing before the Commissioners, and the improper termination warrants granting plaintiff the hearing.

2. Section 3.1--35--10 of the Municipal Code and Ordinance No. 3.01(e)

We agree with the Commissioners that the specific provisions of sections 10--2.1--4 and 10--2.1--17 apply to plaintiff. However, they alternatively argue that plaintiff effectively was removed from office under section 3.1--35--10 of the Municipal Code and ordinance No. 3.01(e). Even if those provisions were to apply, we would conclude that they bar plaintiff's removal.

Section 3.1--30--5 of the Municipal Code, which authorizes the appointment of municipal officers in general, does not prescribe a procedure for removing such officers. The section merely contemplates the replacement of an officer once he has resigned or has been dismissed from office. Section 3.1--30--5(d) provides as follows:

"(d) An appointed officer of a municipality may resign from his or her office. If an appointed officer resigns, he or she shall continue in office until a successor has been chosen

-14-

and has qualified. If there is a failure to appoint a municipal officer, or the person appointed fails to qualify, the person filling the office shall continue in office until a successor has been chosen and has qualified. If an appointed municipal officer ceases to perform the duties of or to hold the office by reason of *** dismissal from or abandonment of office, the mayor or president of the municipality may appoint a temporary successor to the officer." 65 ILCS 5/3.1--30--5(d) (West 2006).

Section 3.1--35--10 of the Municipal Code and ordinance No. 3.01(e) of the Village Code, on the other hand, set forth the procedure for removing a municipal officer generally. Section 3.1--35--10 provides as follows:

"Except where otherwise provided by statute, the mayor or president may remove any officer appointed by the mayor or president under this Code, on any written charge, whenever the mayor or president is of the opinion that the interests of the municipality demand removal. The mayor or president shall report the reasons for the removal to the corporate authorities at a meeting to be held not less than 5 nor more than 10 days after the removal. If the mayor or president fails or refuses to report to the corporate authorities the reasons for the removal, or if the corporate authorities by a two-thirds vote of all members authorized by law to be elected disapprove of the removal, the officer thereupon shall be restored to the office from which the officer was removed. The vote shall be by yeas and nays, which shall be entered upon the journal of the corporate authorities. Upon restoration, the officer shall give a new bond and take a new oath of office. No officer shall be removed a second time for the same offense." 65 ILCS 5/3.1--35--10 (West 2006).

Ordinance No. 3.01(e) was drafted to mirror section 3.1--35--10 of the Municipal Code and provides as follows:

"The President shall have the power to remove any officer appointed by him on any formal charge whenever he is of the opinion that the interests of the Village demand such removal. He shall report the reasons for such removal to the Board at a meeting to be held not less than five days, nor more than ten days after such removal. If the President shall fail, or refuse to file with the Clerk a statement of the reasons for such removal or if the Board, by a two-thirds vote of all its members authorized by law to be elected, by 'yeas' and 'nays,' to be entered upon its record, disapprove of such removal, such officer shall thereupon become restored to the office from which he was removed, but he shall give a new bond and take a new oath of office. No officer shall be removed a second time for the same offense." Richmond Village Code Ordinance No. 3.01(e) (2004).

Section 3.1--35--10 and ordinance No. 3.01(e) required Brusek to report the reasons for the removal at a meeting of the board of trustees 5 to 10 days after the March 15, 2005, termination. Brusek fulfilled the reporting requirement at the special meeting on March 23, 2005. The board of trustees disapproved of the removal by only a three-fifths vote. The vote did not meet the two-thirds threshold to block the removal under section 3.1--35--10 and ordinance No. 3.01(e). Under this scheme, plaintiff was effectively removed as police chief on March 23, 2005.

However, by a four-fifths vote, the board of trustees then placed him on administrative leave, effectively restoring him. When the board of trustees met again on April 6, 2005, and voted to "confirm the removal" of plaintiff as police chief by four-fifths vote, the two-thirds vote needed to block the removal again was not met. No new allegations were presented at the April 6, 2005,

meeting, and thus plaintiff was "removed a second time for the same offense," which is prohibited by section 3.1--35--10 and ordinance No. 3.01(e). See 65 ILCS 5/3.1--35--10 (West 2006); Richmond Village Code Ordinance No. 3.01(e) (2004). Thus, we conclude that, even if section 3.1--35--10 of the Municipal Code and ordinance No. 3.01(e) governed the removal of plaintiff, noncompliance with those provisions would entitle him to summary judgment on his complaint for mandamus.

CONCLUSION

In conclusion, we hold that plaintiff was removed from the office of police chief and that his employment with the Village ended entirely when the board of trustees voted four to one to "confirm the removal of the Police Chief, effective April 30, 2005." See 65 ILCS 5/10--2.1--4, 10--2.1--17 (West 2006). Following the confirmation of the removal, plaintiff was denied procedural due process because the Commissioners failed to "conduct a fair and impartial hearing of the charges." See 65 ILCS 5/10--2.1--17 (West 2006). Because he was denied procedural due process, the trial court correctly granted plaintiff mandamus, directing the Commissioners to hear his petition. By labeling his petition, "Petition of Roger Szewczyk For Hearing As To Reinstatement To His Rank Of Sergeant," plaintiff indicates that he does not seek restoration to the office of police chief. Thus, the hearing before the Commissioners may be limited to the issue of whether the Village police department should rehire him and grant him the rank of sergeant.

For the preceding reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

BOWMAN and ZENOFF, JJ., concur.