# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Szewczyk v. Board of Fire & Police Commissioners*, 2011 IL App (2d) 100321

| | |
|---|---|
| Appellate Court Caption | ROGER SZEWCZYK, Plaintiff-Appellee, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF RICHMOND, TOM VAN DAELE, KEN WERZEK, and ROBERT ELIOT, its Commissioners, THE VILLAGE OF RICHMOND, and KEVIN BRUSEK, Defendant-Appellants. |
| District & No. | Second District<br>Docket No. 2–10–0321 |
| Filed | June 9, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff was removed from his position as police chief after attaining pension eligibility by a vote of the local board of fire and police commissioners and the trial court's reversal of the board's denial of plaintiff's petition for reinstatement to his prior rank as sergeant was itself reversed, since the board's ruling on plaintiff's petition was not against the manifest weight of the evidence where plaintiff presented no evidence in support of his petition. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 09–MR–82; the Hon. Michael T. Caldwell, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Appeal from the Circuit Court of McHenry County, No. 09–MR–82; the Hon. Michael T. Caldwell, Judge, presiding. |
| | |
| | Jennifer J. Gibson, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellants. |
| | |
| | Thomas F. McGuire and Jolanta A. Zinevich, both of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellee |
| | |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Presiding Justice Jorgensen and Justice Bowman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Roger Szewczyk, served as a sergeant in the Village of Richmond (Village) police department from 1995 to 1999. In 1999, defendant Kevin Brusek, then the Village president, appointed him police chief. In 2005, Brusek sent plaintiff a letter announcing that he was "terminated" from office. After voting three times, the five members of the Village board of trustees voted four to one to end plaintiff's employment.

¶ 2    Plaintiff asked the new Village president, Lauri Olson, and the Board of Fire and Police Commissioners of the Village (Commissioners) and its commissioners, Tom Van Daele, Kevin Thomas, and Ken Werzek, to reappoint him as police chief. He also submitted a petition for reinstatement to the rank of sergeant, requesting a hearing before the Commissioners. Olson and the Commissioners declined the requests. Plaintiff filed a complaint for *mandamus*, requesting the circuit court to direct the Commissioners to conduct a hearing on the petition. The parties filed opposing motions for summary judgment, and the trial court ruled for plaintiff.

¶ 3    On appeal in *Szewczyk v. Board of Fire & Police Commissioners of Village of Richmond (Szewczyk I)*, 381 Ill. App. 3d 159 (2008), the Commissioners framed the issues by comparing sections 10–2.1–4 and 10–2.1–17 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/10–2.1–4, 10–2.1–17 (West 2006)) to section 3.1–35–10 of the Municipal Code (65 ILCS 5/3.1–35–10 (West 2006)) and ordinance No. 3.01(e) of the Village of Richmond Code (Village Code) (Richmond Village Code Ordinance No. 3.01(e) (2004)). Sections 10–2.1–4 and 10–2.1–17 of the Municipal Code govern the removal of a police chief in particular, and section 3.1–35–10 and ordinance No. 3.01(e) govern the removal of municipal officers in general. We held that (1) the specific provisions, rather than the general

provisions, applied to plaintiff's tenure as police chief, (2) regardless of the difference between the specific and general provisions, plaintiff was denied procedural due process under both schemes, and (3) the circuit court correctly granted plaintiff *mandamus* directing the Commissioners to hear his petition. *Szewczyk I*, 381 Ill. App. 3d at 170.

¶ 4 On remand, the Commissioners who were serving at the time, defendants Van Daele, Werzek, and Robert Eliot, heard and denied plaintiff's petition for reinstatement to the rank of sergeant, and plaintiff sought administrative review in the circuit court. The circuit court reversed the decision and remanded the matter to the Commissioners, with instructions to reinstate plaintiff to the police department at the rank of sergeant, retroactive to April 30, 2005.

¶ 5 The Commissioners now appeal to this court, arguing that (1) plaintiff did not automatically revert to the position of sergeant upon his discharge as police chief; (2) the hearing on plaintiff's petition for reinstatement as sergeant satisfied his right to due process; and (3) the Commissioners properly denied plaintiff's petition. We agree with the Commissioners and reverse the judgment of the circuit court.

¶ 6 FACTS

¶ 7 In 1990, the Commissioners appointed plaintiff as a full-time, sworn police officer of the Village police department. In 1995, plaintiff was appointed to the rank of sergeant. In 1999, Brusek appointed plaintiff as police chief. At the time of his appointment as police chief, plaintiff was 49 years old and was not eligible for pension benefits, because he had not yet reached the eligibility age of 55.

¶ 8 As of December 31, 2004, plaintiff was a participating employee and a member in good standing of the Illinois Municipal Retirement Fund (IMRF). Also as of that date, plaintiff was eligible to retire on partial pension benefits through the IMRF, under section 7–141 of the Illinois Pension Code (Pension Code) (40 ILCS 5/7–141 (West 2006)). However, plaintiff was to become eligible for full benefits when he reached his fifty-fifth birthday on April 29, 2005.

¶ 9 On March 15, 2005, Brusek sent the Village board of trustees a memorandum that stated, "[a]s of 10:00 this morning; Chief Roger Szewczyk's employment with the Village of Richmond was terminated. There will be an Executive Session tomorrow evening with further details." The minutes of the March 16, 2005, executive session indicate that the board of trustees took no action on the termination.

¶ 10 On March 21, 2005, Brusek sent Karla Thomas, the Village clerk, and Lisa Waggoner, the Village attorney, a letter explaining that Brusek had attempted to suspend plaintiff on March 15, but, when plaintiff declared that he could not be suspended, Brusek "fired" him. Brusek's letter to Thomas and Waggoner included his reasons for the termination, including insubordination, failure to investigate and report official misconduct, failure to meet budgetary goals, failure to exercise management and leadership skills, and inability to work with other municipal entities.

¶ 11 On March 23, 2005, the board of trustees held a special meeting at which it debated plaintiff's termination. Initially, two trustees voted for termination and three voted against

it. The board of trustees then debated placing plaintiff on administrative leave with pay. Four trustees voted to place plaintiff on leave until April 6, 2005, and one voted against it. Following the meeting, Brusek sent plaintiff a letter informing him that he had been placed on administrative leave, but the letter did not state the duration. Brusek ordered plaintiff to turn in his badge, his nameplate, and all other equipment that belonged to the Village. Brusek informed plaintiff that he could not carry a weapon or act as a police officer. Brusek sent a copy of the letter to the Commissioners, the board of trustees, and Waggoner.

¶ 12 On April 6, 2005, the board of trustees held a regular meeting. At Brusek's invitation, Village president-elect Olson joined the executive session, at which plaintiff's status was discussed further. Four of the five trustees voted to terminate plaintiff, effective April 30, 2005, one day after his fifty-fifth birthday.

¶ 13 On April 30, 2005, Brusek sent plaintiff a letter informing him of the termination. Brusek sent copies of the letter to the Commissioners, the board of trustees, and Waggoner. The letter provided as follows:

> "You have been on paid Administrative Leave through April 30, 2005, and received all benefits through this date. As of April 30th you are separated from employment with the Village of Richmond and you are free to take your retirement. Enclosed you will find a check for your unused vacation and sick days. Also enclosed is a copy of the COBRA plan for medical insurance."

¶ 14 On May 4, 2005, Olson assumed office as Village president. On May 11, 2005, plaintiff's counsel sent the Commissioners a petition for reinstatement to his previous rank of sergeant, requesting a hearing, and, the next day, counsel sent the petition to Olson.

¶ 15 At no time did either Brusek or the board of trustees ask plaintiff to appear or otherwise answer the allegations that were the basis for his termination. Plaintiff asked to appear before the board of trustees, but the request was denied. Besides filing the petition for reinstatement to his previous rank, plaintiff did not ask to appear before the Commissioners to answer the allegations, and they did not ask him to do so.

¶ 16 Plaintiff sought and obtained from the circuit court a writ of *mandamus* to compel the Commissioners to grant him a hearing on his petition for reinstatement to the rank of sergeant. The Commissioners appealed, and, after discussing the relevant statutory framework for removing or discharging a police chief, we remanded the cause to the Commissioners to hear plaintiff's petition for reinstatement to the rank of sergeant. *Szewczyk I*, 381 Ill. App. 3d at 170.

¶ 17 On remand, the Commissioners heard and denied plaintiff's petition for reinstatement to the rank of sergeant. The hearing was limited to argument, as plaintiff only introduced *Szewczyk I* as evidence supporting his petition. After recapitulating the procedural history of the case, the Commissioners found that all parties were given an opportunity to be heard and present whatever evidence they had in support of or opposition to plaintiff's reinstatement. The Commissioners held that, pursuant to section 10–2.1–4 of the Municipal Code, "the Village of Richmond was without any legal obligation to reinstate [plaintiff] to the rank of sergeant after his employment with the Village was terminated on April 30, 2005. There is no legal requirement either statutory or otherwise that the [Village] rehire [plaintiff] as a

-4-

sworn officer of its police department."

¶ 18    Plaintiff sought administrative review in the circuit court, which reversed the Commissioners' decision. The court found that plaintiff had been denied due process on remand in that the Village had not filed formal charges, plaintiff was not given notice of any charges, and the Commissioners failed to conduct a meaningful hearing to determine whether cause existed to terminate plaintiff's employment. The court remanded the matter to the Commissioners with instructions to reinstate plaintiff to the police department at the rank of sergeant, retroactive to April 30, 2005. The Commissioners filed a timely notice of appeal.

¶ 19                                    ANALYSIS

¶ 20    This is the second appeal addressing how plaintiff's discharge as police chief affects his potential reinstatement to the Village police department at his previous rank of sergeant. The issue is presented in the procedural context of the Commissioners' appeal from the circuit court's order granting plaintiff relief on his complaint for administrative review. In an appeal from an administrative agency's decision, this court reviews the agency's determination, not that of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). In all administrative proceedings, the plaintiff bears the burden of proof. *Marconi*, 225 Ill. 2d at 532-33. Based upon the question presented, this court reviews agency determinations under three distinct standards of review. First, the agency's interpretation of a statute or administrative rule is a question of law, which receives *de novo* review. *Marconi*, 225 Ill. 2d at 532. Second, the agency's factual determinations will be upheld unless they are against the manifest weight of the evidence. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 465 (2009). A factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *Peacock v. Board of Trustees of the Police Pension Fund*, 395 Ill. App. 3d 644, 652 (2009). Third, this court reviews mixed questions of fact and law under the "clearly erroneous" standard. *McKee v. Board of Trustees of the Champaign Police Pension Fund*, 367 Ill. App. 3d 538, 543 (2006). An administrative agency's decision is clearly erroneous where the reviewing court comes to the definite and firm conclusion that the agency has committed an error. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). The "clearly erroneous" standard provides some deference based upon the agency's experience and expertise, falling between *de novo* review and manifest-weight-of-the-evidence review. *McKee*, 367 Ill. App. 3d at 543.

¶ 21    In *Szewczyk I*, we determined that sections 10–2.1–4 and 10–2.1–17 of the Municipal Code (65 ILCS 5/10–2.1–4, 10–2.1–17 (West 2006)) govern plaintiff's discharge as police chief. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004). The plain language of the statute is the best indicator of the legislature's intent, and, when that language is clear, its meaning will be given effect without resort to other tools of interpretation. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35 (2004).

¶ 22    The parties do not dispute the procedural history and the events that culminated in plaintiff's discharge. Whether plaintiff automatically reverted to his previous rank of sergeant

after being discharged is a question of law, which we review *de novo*. However, if plaintiff did not automatically revert to the rank of sergeant as a matter of law, the Commissioners' decision to deny his petition for reinstatement would be reviewed under the manifest-weight-of-the-evidence standard because his suitability to return to the police department is a question of fact.

¶ 23                              A. Appointment to Office

¶ 24    The statutes and ordinances that authorized plaintiff's appointment as police chief illustrate the procedure for his discharge and his potential restoration to his previous rank. The Village Code was harmonized with the Municipal Code to authorize Brusek, as the Village president, to appoint plaintiff as police chief.

¶ 25    The Municipal Code provides that a village president, by and with the advice and consent of the board of trustees, may appoint "officers necessary to carry into effect the powers conferred upon municipalities." 65 ILCS 5/3.1–30–5(a) (West 2006). While section 3.1–30–5(a) does not expressly prescribe the appointment of a police chief, there is no dispute that a police chief qualifies as a necessary officer whom a village president may appoint. *Szewczyk I*, 381 Ill. App. 3d at 165.

¶ 26    Section 3.1–30–5(a) applies to municipal officers generally, but section 10–2.1–4 of the Municipal Code expressly addresses the appointment of a police chief. Section 10–2.1–4 provides in part that "[t]he board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide; except as otherwise provided in this Section, and except that in any municipality which adopts or has adopted this Division 2.1 and also adopts or has adopted Article 5 of this Code, the chief of police and the chief of the fire department shall be appointed by the municipal manager, if it is provided by ordinance in such municipality that such chiefs, or either of them, shall not be appointed by the board of fire and police commissioners." 65 ILCS 5/10–2.1–4 (West 2006).

¶ 27    In this case, the Village enacted ordinance No. 3.13(B) to establish that the village president, rather than the Commissioners, has the authority to appoint the police chief. Ordinance No. 3.13(B) provides in part that "[t]he Chief of Police shall be appointed by the Village President with the advice and consent of the Board of Trustees on such terms and conditions as they may fix by ordinance, resolution or written agreement with such person." Richmond Village Code Ordinance No. 3.13(B) (2004).

¶ 28    Here, there is no dispute that Brusek adhered to the Municipal Code and the Village ordinances in appointing plaintiff as police chief in 1999. However, the parties disagree on how the removal provisions affect plaintiff's potential return to the police department.

¶ 29            B. Removal From Office and Restoration to Previous Rank

¶ 30    Sections 10–2.1–4 and 10–2.1–17 of the Municipal Code govern the removal of a police chief specifically, and section 3.1–35–10 and ordinance No. 3.01(e) govern the removal of

municipal officers generally. In *Szewczyk I*, we concluded that the two schemes conflict in the way the vote of the board of trustees affected the discharge. *Szewczyk I*, 381 Ill. App. 3d at 165. Because specific provisions control over more general provisions in the interpretation of legislative intent (*Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002)), we concluded that sections 10–2.1–4 and 10–2.1–17 apply. *Szewczyk I*, 381 Ill. App. 3d at 165. Regardless of the conflict, we concluded that Brusek, the board of trustees, and the Commissioners deprived plaintiff of due process by failing to adhere to either scheme. *Szewczyk I*, 381 Ill. App. 3d at 166.

¶ 31                                     1. Section 10–2.1–4 of the Municipal Code

¶ 32        Sections 10–2.1–4 and 10–2.1–17 of the Municipal Code are similar in prescribing a procedure for removing a police chief. The application of the statutes to these facts is best understood by parsing the provisions, which the General Assembly set forth as a list.

¶ 33        The first relevant portion of section 10–2.1–4 provides that "[i]f the chief of the fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such case the appointing authority shall file with the corporate authorities the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities." 65 ILCS 5/10–2.1–4 (West 2006). Under this straightforward provision, Brusek, the appointing authority, was authorized to discharge plaintiff as police chief. Brusek, as required, filed with the board of trustees the reasons for the discharge, and the discharge did not become effective until confirmed by the trustees' majority vote.

¶ 34        Section 10–2.1–4 next states that "[i]f a member of the department is appointed chief of police or chief of the fire department prior to being eligible to retire on pension, he shall be considered as on furlough from the rank he held immediately prior to his appointment as chief." 65 ILCS 5/10–2.1–4 (West 2006). The Commissioners correctly concede that plaintiff was on furlough from the rank of sergeant during his tenure as police chief because (1) plaintiff was a member of the department at the time of the appointment (*i.e.*, he was promoted from within) and (2) the appointment occurred before plaintiff had attained eligibility to retire on pension.

¶ 35        Section 10–2.1–4 goes on to provide that "[i]f he resigns as chief or is discharged as chief prior to attaining eligibility to retire on pension, he shall revert to and be established in whatever rank he currently holds, except for previously appointed positions, and thereafter be entitled to all the benefits and emoluments of that rank, without regard as to whether a vacancy then exists in that rank." 65 ILCS 5/10–2.1–4 (West 2006). Determining whether the discharge caused plaintiff to revert automatically to the rank of sergeant turns on two questions: (1) when did plaintiff attain eligibility to retire on pension and (2) when was plaintiff discharged.

¶ 36        If plaintiff was discharged *before* attaining eligibility to retire on pension, he "shall revert" to his previous rank of sergeant and "thereafter be entitled to all the benefits and emoluments of that rank, without regard as to whether a vacancy then exists in that rank."

65 ILCS 5/10–2.1–4 (West 2006). However, if plaintiff was discharged *after* attaining eligibility to retire on pension, section 10–2.1–4 is silent on his potential reversion to his previous rank. Section 10–2.1–4 does not specify whether a discharged police chief shall revert, shall not revert, or may revert to his previous rank if he is discharged after attaining pension eligibility, and the absence of mandatory language suggests that the Commissioners have discretion in deciding whether to reinstate such an officer.

¶ 37                                  a. Eligibility to Retire on Pension

¶ 38        The parties dispute whether plaintiff was "discharged as chief prior to attaining eligibility to retire on pension." 65 ILCS 5/10–2.1–4 (West 2006). Plaintiff asserts that he was discharged before attaining eligibility to retire on pension and therefore is entitled to revert to the rank of sergeant because, even assuming that he was effectively terminated on April 30, 2005, the termination occurred (1) before he attained eligibility to receive his maximum pension benefit at age 60 or (2) before he reached age 65, which is the age for mandatory retirement under section 10–2.1–17. See 65 ILCS 5/10–2.1–17 (West 2006) ("The age for retirement of policemen or firemen in the service of any municipality which adopts this Division 2.1 is 65 years, unless the Council or Board of Trustees shall by ordinance provide for an earlier retirement age of not less than 60 years.").

¶ 39        Plaintiff equates "attaining eligibility to retire on pension" in section 10–2.1–4 with reaching the "age for retirement" in section 10–2.1–17, but his position is flawed because the phrases are not synonymous. The plain and ordinary meaning of the statutes supports the Commissioners' interpretation that "attaining eligibility to retire on pension" means being eligible to receive *any* pension upon retirement, not attaining eligibility to receive the maximum benefit at age 60 or reaching the mandatory retirement age of 65. Therefore, we conclude that plaintiff "attained eligibility to retire on pension" on April 29, 2005, when he turned 55 and became eligible to receive a monthly benefit of $948.

¶ 40        Plaintiff alternatively asserts that he *never* attained eligibility to retire on pension under section 10–2.1–4, because he never applied for pension benefits. Plaintiff argues that attaining pension eligibility does not occur until the IMRF confirms the eligibility after the employee files an application. We disagree. "[W]here a statute is clear and unambiguous, courts cannot read into the statute limitations, exceptions, or other conditions not expressed by the legislature," and courts "should evaluate a statutory provision as a whole rather than reading phrases in isolation." *People v. Glisson*, 202 Ill. 2d 499, 505 (2002). Plaintiff reads into section 10–2.1–4 a condition not specified by the General Assembly. The plain and ordinary meaning of the statute does not show that the General Assembly intended for either a pension application by a former chief or a pension eligibility determination by the IMRF to dictate whether a discharged police chief reverts to a previous rank. Moreover, allowing a discharged police chief to control his eligibility to retire on pension by delaying the filing of an application with the IMRF would subvert the automatic reversion provision of section 10–2.1–4. The General Assembly did not intend such a result.

¶ 41                                  b. Effective Date of Discharge

¶ 42      Determining the effective date of plaintiff's discharge is a thornier issue, considering the drawn-out termination process. On March 15, 2005, Brusek informed the board of trustees that "[a]s of 10:00 this morning; Chief Roger Szewczyk's employment with the Village of Richmond was terminated." On March 21, 2005, Brusek informed Thomas and Waggoner that he "fired" plaintiff on March 15 after a confrontation, and Brusek alleged several examples of inadequate job performance.

¶ 43      On March 23, 2005, by a four-to-one vote, the board of trustees placed plaintiff on administrative leave until April 6, 2005. Brusek ordered plaintiff to turn in equipment belonging to the Village and informed plaintiff that he could not carry a weapon or act as a police officer. On April 6, 2005, by a four-to-one vote, the board of trustees confirmed the termination of plaintiff's employment, but they specified April 30, 2005, as the effective date of the termination.

¶ 44      On April 29, 2005, plaintiff turned 55 years old, which we have determined rendered him eligible to retire on pension for purposes of section 10–2.1–4. On April 30, 2005, Brusek sent plaintiff written notification that he had been "separated from employment" with the Village and was free to take his retirement, effective that day. On May 4, 2005, Olson assumed office as Village president.

¶ 45      In this appeal, the Commissioners base their arguments on the assumption that the effective date of plaintiff's discharge was April 30, 2005, as voted by the board of trustees at the April 6, 2005, meeting. Plaintiff argues that the discharge occurred (1) on March 15, 2005, the date Brusek told plaintiff he was "fired" or (2) on April 6, 2005, the date the board of trustees actually voted to confirm the discharge. Both events occurred before plaintiff turned 55 and attained eligibility to retire on pension.

¶ 46      Plaintiff's discharge could not have been effective at any time before the board of trustees held their vote, because the "discharge shall not become effective unless confirmed by a majority vote of the corporate authorities." 65 ILCS 5/10–2.1–4 (West 2006). Thus, we reject plaintiff's argument that he was discharged on March 15, 2005, or any other date before the board of trustees voted.

¶ 47      While the board of trustees voted on April 6, 2005, to confirm the discharge, they provided for plaintiff to continue receiving full pay and benefits until April 30, 2005. We reject plaintiff's position that the effective date of discharge was the date of the vote. The timing of such a vote is a matter within the trustees' discretion. Thus, the trustees could effect plaintiff's discharge on April 30, 2005, in two ways: (1) schedule the vote for April 30 or, (2) at an earlier date, specify April 30 as the prospective date of the discharge. The trustees happened to choose the latter. We conclude that, because specifying a prospective date of discharge is no different from delaying the vote itself, both are matters within the trustees' discretion.

¶ 48      We acknowledge that delaying the effective date of discharge until after plaintiff attained eligibility to retire on pension was a transparent attempt to circumvent the automatic reversion provision of section 10–2.1–4. Preventing plaintiff's automatic reversion to the rank of sergeant denied plaintiff "all the benefits and emoluments of that rank, without regard as to whether a vacancy then exists in that rank." 65 ILCS 5/10–2.1–4 (West 2006). Plaintiff

argues that the tactic denied him due process, but the assertion is unpersuasive. Plaintiff could have invoked the reversion provision himself by resigning as chief before attaining eligibility to retire on pension on his fifty-fifth birthday.

¶ 49 While plaintiff suggests that his discharge was somehow incomplete or flawed, we note that his tenure as police chief ended at the very latest when Olson assumed office as the new Village president. See 65 ILCS 5/3.1–30–5(c) (West 2006) (an appointed municipal officer's term, except as otherwise expressly provided in the Municipal Code, shall not exceed that of the mayor or president of the municipality).

¶ 50 In any event, we conclude that plaintiff was discharged after attaining eligibility to retire on pension, because (1) he attained eligibility to retire on pension on April 29, 2005, and (2) the effective date of discharge was April 30, 2005. See 65 ILCS 5/10–2.1–4 (West 2006). Therefore, the automatic reversion provision of section 10–2.1–4 did not require that plaintiff revert to the rank of sergeant upon his discharge as police chief.

¶ 51 2. Section 10–2.1–17 of the Municipal Code

¶ 52 Section 10–2.1–17 sets forth a procedure for discharging rank-and-file officers and police chiefs. The statute provides that "[e]xcept as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense." 65 ILCS 5/10–2.1–17 (West 2006). This introductory provision places on the Village the burden of serving written charges on the officer and showing cause to discharge.

¶ 53 Section 10–2.1–17 also addresses the discharge of a police chief specifically: "[i]f the chief of the fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such case the appointing authority shall file with the corporate authorities the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities." 65 ILCS 5/10–2.1–17 (West 2006). This provision is consistent with section 10–2.1–4. Brusek appointed plaintiff as police chief by ordinance, and therefore he was authorized to discharge plaintiff upon filing with the board of trustees the reasons for the discharge. The discharge did not become effective unless confirmed by a majority vote of the board of trustees, which we have determined occurred as of April 30, 2005.

¶ 54 The Commissioners argue that, when the board of trustees confirmed Brusek's decision, plaintiff's termination was complete on April 30, 2005, and that he was entitled to no further hearing. However, after prescribing a procedure for the appointing authority to discharge the police chief, section 10–2.1–17 goes on to state, "[t]he board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time. In case an officer or member is found guilty, the board may discharge him, or may suspend him not exceeding 30 days without pay. The board may suspend any officer or member pending the hearing with or without pay, but not to exceed 30 days. If the Board of Fire and Police

-10-

Commissioners determines that the charges are not sustained, the officer or member shall be reimbursed for all wages withheld, if any." 65 ILCS 5/10–2.1–17 (West 2006). This provision, which mandates a hearing of the charges before the Commissioners, appears to be at odds with the provision authorizing the appointing authority to discharge a police chief upon a majority vote of the corporate authorities. Thus, section 10–2.1–17 contains separate termination provisions involving (1) the village president and corporate authorities and (2) the Commissioners. However, the statute does not state whether a village president's termination of a police chief requires confirmation by both the corporate authorities and the Commissioners.

¶ 55    The provision involving the village president and the corporate authorities mentions police chiefs specifically and speaks in terms of "reasons" for the discharge. See 65 ILCS 5/10–2.1–17 (West 2006) ("If the chief of the fire department or the chief of the police department or both of them are appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such case the appointing authority shall file with the corporate authorities the reasons for such removal or discharge, which removal or discharge shall not become effective unless confirmed by a majority vote of the corporate authorities."). In contrast, the provision involving the Commissioners mentions officers and members of the force generally and speaks in terms of "charges" that are the basis for discharge. 65 ILCS 5/10–2.1–17 (West 2006) ("[N]o officer or member of the fire or police department *** shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. *** The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges ***."). Because specific provisions control over more general provisions in the interpretation of legislative intent (*Knolls*, 202 Ill. 2d at 459), we conclude that the only reasonable interpretation of section 10–2.1–17 is that (1) the village president and corporate authorities discharge a police chief who is appointed by ordinance and (2) the Commissioners discharge rank-and-file police officers.

¶ 56    Our interpretation of section 10–2.1–17 is consistent with the automatic reversion provision of section 10–2.1–4. The right of a discharged police chief to revert to his previous rank would be rendered meaningless if all fired police chiefs, regardless of their eligibility to retire on pension, were entitled to full hearings of charges before the Commissioners. See *Dow Chemical Co. v. Department of Revenue*, 224 Ill. App. 3d 263, 266 (1991) (in interpreting a statute, "each part of a statute [is read] in light of every other provision, [so that] the entire statute [is] construed to produce a harmonious whole").

¶ 57    The right to a hearing before the Commissioners where the Village proves the charges and the chief is given an opportunity to present a defense (65 ILCS 5/10–2.1–17 (West 2006)) is among the benefits and emoluments of plaintiff's previous rank of sergeant. See 65 ILCS 5/10–2.1–4 (West 2006). However, we have determined that plaintiff did not revert to the rank of sergeant upon his discharge as police chief because he had attained eligibility to retire on pension. If section 10–2.1–17 automatically entitled plaintiff to a hearing for the Commissioners to determine whether he was discharged properly, regardless of whether he had attained eligibility to retire on pension, the reversion provision of section 10–2.1–4 would be rendered superfluous. To avoid this result, we hold that plaintiff's discharge was

complete upon the effective date of the board of trustees' majority vote to confirm his discharge.

¶ 58 Accordingly, we reject plaintiff's interpretation of section 10–2.1–17 that, when an appointing authority discharges a police chief, the discharge does not become effective until (1) the corporate authorities by a majority vote confirm the discharge *and* (2) the village serves the police chief with written charges and proves at a hearing before the Commissioners that cause exists for terminating the chief's employment. We hold that the additional action by the Commissioners is not necessary to make the discharge effective where the chief is fired after attaining eligibility to retire on pension. To the extent that our holding might appear inconsistent with *Szewczyk I*, we take this opportunity to clarify *Szewczyk I*.

¶ 59                          C. Hearing Before the Commissioners

¶ 60 Although plaintiff does not seek reinstatement to the office of police chief, he denies that cause exists to bar his reinstatement as sergeant. Plaintiff echoes the circuit court's conclusion that section 10–2.1–4 of the Municipal Code did not compel his retirement or prohibit his reinstatement as sergeant, even if he was discharged after attaining pension eligibility. Relying on *Szewczyk I*, plaintiff argues that the Village had the burden of filing formal charges and proving at the hearing before the Commissioners that cause exists to bar his reinstatement. The Commissioners respond that neither section 10–2.1–4 nor section 10–2.1–17 required them to reinstate plaintiff to the rank of sergeant, and therefore they had discretion to deny plaintiff's petition for reinstatement. The Commissioners argue that plaintiff had the burden of proof on his petition.

¶ 61 As discussed, section 10–2.1–4 is silent on a police chief's potential reversion to his previous rank if he is discharged after attaining eligibility to retire on pension, as plaintiff was in this case. The public, the bar, and the judiciary would benefit from the General Assembly revisiting sections 10–2.1–4 and 10–2.1–17 to address the status of a police chief who has been discharged after attaining eligibility to retire on pension.

¶ 62 Nevertheless, we conclude that plaintiff had the burden of proof on his petition for reinstatement. Plaintiff was discharged as police chief after attaining eligibility to retire on pension. The timing of the discharge means that plaintiff did not automatically revert to the rank of sergeant such that he no longer was a member of the police department at all. As plaintiff was a former member of the police department, section 10–2.1–17 did not entitle plaintiff to a hearing before the Commissioners where the Village would be required to show cause for the termination of his employment and allow him to present a defense. The Village did not trigger the proceeding before the Commissioners by firing plaintiff; instead, plaintiff initiated the proceeding by filing his petition for reinstatement. In all administrative proceedings, the plaintiff bears the burden of proof. *Marconi*, 225 Ill. 2d at 532-33. Because plaintiff initiated the hearing, he had the burden of proving that the police department should hire him back to the force.

¶ 63 We wish to further clarify *Szewczyk I*, where we summarized our holding as follows:
        "In conclusion, we hold that plaintiff was removed from the office of police chief and

that his employment with the Village ended entirely when the board of trustees voted four to one to 'confirm the removal of the Police Chief, effective April 30, 2005.' See 65 ILCS 5/10–2.1–4, 10–2.1–17 (West 2006). Following the confirmation of the removal, plaintiff was denied procedural due process because the Commissioners failed to 'conduct a fair and impartial hearing of the charges.' See 65 ILCS 5/10–2.1–17 (West 2006). Because he was denied procedural due process, the trial court correctly granted plaintiff *mandamus*, directing the Commissioners to hear his petition. By labeling the document 'Petition of Roger Szewczyk For Hearing As To Reinstatement To His Rank Of Sergeant,' plaintiff indicates that he does not seek restoration to the office of police chief. Thus, the hearing before the Commissioners may be limited to the issue of whether the Village police department should rehire him and grant him the rank of sergeant." *Szewczyk I*, 381 Ill. App. 3d at 170-71.

¶ 64 Reviewing *Szewczyk I* in its entirety shows that we remanded the cause for a hearing before the Commissioners to determine whether plaintiff should be hired back as a sergeant. We did not intend to direct the Commissioners to consider on remand whether cause existed for plaintiff's discharge or whether he should be reinstated as police chief.

¶ 65 Moreover, we conclude that the Commissioners afforded plaintiff a fair hearing on his petition for reinstatement and that plaintiff failed to prove that he should be hired back as a sergeant. Plaintiff was allowed to present his petition, and in *Szewczyk I* we stated that the hearing could be limited to plaintiff's petition for reinstatement. Plaintiff suggests that his discharge was not effective because his hearing before the Commissioners was defective, but that argument lacks merit because he would have been discharged automatically upon Olson taking office as the new Village president. At the hearing, plaintiff introduced no evidence that the Commissioners should be compelled to reinstate him or that any of the allegations against him were false.

¶ 66                                 CONCLUSION

¶ 67 We conclude that plaintiff was discharged *after* attaining eligibility to retire on pension but that section 10–2.1–4 provides no guidance on his potential reversion to his previous rank. Section 10–2.1–4 does not specify whether a discharged police chief shall revert, shall not revert, or may revert to his previous rank if he is discharged after attaining pension eligibility. Moreover, section 10–2.1–17 does not explicitly state whether a police chief, once effectively removed by the corporate authorities, still is entitled to a hearing before the Commissioners where formal written charges are filed and proved by the village.

¶ 68 However, the only reasonable interpretation of sections 10–2.1–4 and 10–2.1–17 is that (1) the village president and corporate authorities discharge a police chief who is appointed by ordinance and (2) the Commissioners discharge rank-and-file police officers. Because sections 10–2.1–4 and 10–2.1–17 did not mandate plaintiff's reversion to the rank of sergeant, he was not "entitled to all the benefits and emoluments of that rank" (65 ILCS 5/10–2.1–4 (West 2006)), including notice of written charges from the Village and a hearing before the Commissioners where he may present a defense and the Village must prove that cause for termination exists (see 65 ILCS 5/10–2.1–17 (West 2006)). Considering that

plaintiff presented no evidence at the hearing on his petition for reinstatement to the rank of sergeant, we further conclude that the Commissioners' denial of the petition was not against the manifest weight of the evidence. We reverse the judgment of the circuit court, accordingly.

¶ 69    For the preceding reasons, the judgment of the circuit court of McHenry County is reversed.

¶ 70    Reversed.